Russell BAILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–90–0045–CR.

Court of Appeals of Texas,
Amarillo.

Jan. 30, 1991.

Richard L. Wardroup, Lubbock, for appellant.

Travis Ware, Dist. Atty., Michael West, Asst. Dist. Atty., Lubbock, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellant Russell Bailey brings this appeal from his conviction for delivery of a controlled substance and the resultant jury-assessed punishment of forty-five (45) years in the Department of Corrections.[1] In seven points, appellant says the trial court erred in (1) denying his motion for

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

mistrial when the prosecutor, in closing argument at the punishment phase, encouraged the jury to speculate about testimony which the witness Glenn Osborn would have given if he had been allowed to do so; (2) in overruling his motion to discover the identification of the informant; (3) in overruling his objection to hearsay statements made by the witness Glenda Humphreys at a time when the evidence was insufficient to show the existence of a conspiracy between appellant and that witness; (4) in overruling his objections to Humphreys' statements since she was not called as a trial witness which denied appellant of his right to be confronted by, and cross-examine, witnesses against him; (5) by permitting testimony about the number of times heroin of the purity delivered by appellant could be cut; (6) in denying his motion for mistrial because the prosecutor elicited testimony about the danger of undercover police work without first approaching the bench as required in appellant's motion in limine number two granted by the trial court; and (7) in denying his motion for mistrial when the prosecutor inquired of the witness Bonifacio Esquivel whether appellant "had performed as a cooperating individual for the State." We affirm the judgment of the trial court.

■ The portion of the prosecutor's argument challenged by appellant in his first point was made in the State's closing summation. It is as follows:

Remember what Glenn Osborn said. You know in the last couple of years it just so happens that he was transferred from the Drug Enforcement Administration, to Street Patrol. Coincidental his knowledge of the reputation, his testimony that he gave you, is based on what he knew more than two years ago. That's no surprise. That's when he worked for the Drug Enforcement Administration. You know what Glenn Osborn is trying to tell you—.

The thrust of appellant's argument is that the clear, and impermissible, implication of the argument is that Officer Osborn was being restricted in what he was allowed to tell the jury regarding the reputa-

tion of appellant and, secondly, that if the officer had continued to work for the Drug Enforcement Administration during the two years prior to trial, he would have been involved in, and known, the reputation of appellant during that period.

■ In *Bell v. State*, 724 S.W.2d 780 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), the Court had occasion to give an extensive explication on jury argument and the effect of impermissible arguments. It pointed out that, generally, there are four categories of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. When a challenged argument is improper because it does not fit into any of those, or other approved categories, then we must determine whether the error requires reversal. To require reversal, in light of the record as a whole, the argument must be extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the trial proceedings. *Id.* at 802–03. Moreover, ordinarily, any injury from an improper jury argument by a prosecutor is obviated when an objection is sustained and the jury is instructed to disregard the argument. Unless the remarks are so inflammatory that their prejudicial effect cannot reasonably be removed by such an admonition, a reversal of the conviction is not required. *Thomas v. State*, 578 S.W.2d 691, 695 (Tex.Crim.App. [Panel Op.] 1979). *See also Franklin v. State*, 693 S.W.2d 420, 429 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). Moreover, absent a contrary showing, we must presume that a jury follows the instructions given by the trial judge in the manner presented. *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Crim. App.1987); *Reynolds v. State*, 686 S.W.2d 264, 267–68 (Tex.App.—Amarillo 1985, no pet.).

■ Prior to the challenged argument, appellant's counsel, in his summation to the jury argued:

But you know we asked these reputation witnesses, have you heard anything bad about Russell Bailey in the last two years, from roughly the time of this offense that you've convicted him of? No, we haven't.

And, believe me, with all the power of the State of Texas, if there had been something bad said about Russell Bailey in the last few years, you'd heard it. But, there wasn't, and the reason is clear. You saw the two employers of Mr. Bailey take the witness stand, and say he'd been working. He worked long, he worked hard hours. He works with the lady that he lives with. And he's a good worker.

In view of appellant's challenge to the lack of reputation testimony by the State within the two years preceding the trial, and necessary implications from the reference to the employers' testimony, the State was entitled to reply, and its argument was within that perimeter. Moreover, even assuming arguendo, the argument was not permissible, we have examined the entire record and do not find that, in the face of the trial court's prompt action in sustaining the objection and instructing the jury to disregard, the argument was so egregious as to require reversal. Appellant's first point is overruled.

■ In his second point, appellant complains of the trial court's refusal to compel the State to reveal the name of its confidential informant. The theory appellant espouses on appeal is that the disclosure of the name of the informer would facilitate his proof that he was not involved in a conspiracy with Glenda Humphreys which would result in the trial court sustention of his objections to admission of hearsay statements of Glenda Humphreys. He also posits that since the former only identified Humphreys' co-conspirator as her brother-in-law and not by physical description, discrepancies in descriptions of the perpetrator of the substance delivery would have, at least, resulted in a more effective cross-examination of the State's witnesses.

■ Parenthetically, the basis of appellant's written trial court motion for disclosure was that "[s]aid witness would probably have direct knowledge relevant to the defense of entrapment" and that without that information, appellant "will be forced to offer either no defense or a defense inconsistent with the defense of entrapment." That is a theory different from that now asserted by appellant. It is well established that when the basis of a motion at trial does not comport with the basis of a ground on appeal, nothing is presented for appellate review. *Rovinsky v. State*, 605 S.W.2d 578, 581 (Tex.Crim.App. [Panel Op.] 1980). The basis for the rule requiring timely specific objections is to apprise the trial court of a party's complaint and afford it an opportunity to consider and rule upon it. *Darland v. State*, 582 S.W.2d 452, 455 n. 7 (Tex.Crim.App. [Panel Op.] 1979). *See also Bower v. State*, 769 S.W.2d 887, 906 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

However, at the time the motion was presented to the trial court, appellant's counsel argued, "Our feeling is that person (the informant) would know that Russell Bailey was not a part of that (the offense) and that would be proof that—or that Glenda Humphreys' actions had no knowledge of the actions or inactions of Russell Bailey." Arguably, that is sufficiently similar to appellant's point on appeal to justify our discussion of his contention.

■ In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) the Court noted three factors relevant to a determination of the necessity for disclosure of the name of an informant. Those factors are where the informer (1) participated in the offense, (2) was present at the time of the offense or arrest, or (3) was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged.

Texas Rule of Criminal Evidence 508(a) provides, in general terms, that a public entity has a privilege to refuse to disclose the identity of an informant. However, section (c)(2) of the rule provides:

If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informant can, in fact, supply that testimony.

The intent of the rule seems to be that to overcome the entity's privilege not to disclose, a defendant must make a preliminary showing that an informer may be able to give testimony necessary to a fair determination of guilt or innocence. If the trial judge finds that preliminary showing to have been made, the judge must give the public entity an opportunity to show, in camera, facts to rebut that preliminary showing. If the public entity does not invoke its privilege to the in camera hearing, or, after such a hearing the judge continues to find the informer can provide such testimony, then the public entity must either reveal the identity or the charges will be dismissed. If the mere allegation that the informant's identity was necessary to determine whether that informant might be able to give the requisite testimony was sufficient, without a preliminary showing that the informant could reasonably be expected to give such testimony, then the identity of the informant would necessarily have to be disclosed in every case. *See Thompson v. State*, 741 S.W.2d 229 (Tex. App.—Fort Worth 1987, pet. ref'd).

 Thus, in light of the rule and the teaching of the *Roviaro* case, it appears that the general rule is that if a defendant can show that an informer participated in the offense, or was present at the time of the offense or arrest, the defendant is entitled to be informed of the identity of an informer. Where the allegation is that a defendant is entitled to know the identity of the informer because that informer was a material witness as to whether appellant was knowingly involved in the charged act, such a defendant must make a

substantial preliminary showing that the informer can reasonably be expected to give testimony material to decision of the charged offense.

There is nothing in the record to show that the informant participated in the transaction which is the basis of this prosecution, or that he was present at the time of either the offense or the arrest. Our task, then, is to determine if appellant made a sufficient preliminary showing of materiality to entitle him to the identity of the informant.

Appellant does not denominate testimony in the record that would support his speculation as to the informant's testimony, nor does our examination of the record reveal the existence of testimony sufficient to sustain a preliminary showing of materiality. The trial court did not err in refusing to require the State to reveal the name of its informant. Appellant's second point is overruled.

 In his third point, appellant argues the trial court erred in admitting hearsay statements of Glenda Humphreys when the evidence was insufficient to show the existence of a conspiracy between Ms. Humphreys and appellant at the time those statements were made. In his fourth point, he argues that the admission of the statements reversibly denied him his constitutional right to confront and cross-examine witnesses against him.

 As appellant recognizes, by provision of Texas Rule of Criminal Evidence 801(e)(2),[2] a statement of a co-conspirator of a party during the course and in furtherance of the conspiracy, is not hearsay. The co-conspirator exception to the hearsay rule is not limited to prosecutions for conspiracy, but is a rule of evidence applicable to any offense. *Roy v. State*, 608 S.W.2d 645, 651 (Tex.Crim.App. [Panel Op.] 1980).

The statements in question were not admitted until after the trial court held a hearing outside the presence and hearing of the jury as required by Rule 104. At that hearing, Bonifacio Esquibel, a narcot-

**2.** Reference to rule numbers later made in the discussion of these two points are to those rules

contained in the Texas Rules of Criminal Evidence.

ics investigator with the Department of Public Safety, testified. Although the name of the officer is referred to in the briefs as "Esquivel," it is shown in the statement of facts as Esquibel, and that is the spelling we will use.

The officer said that a confidential informant told him that Glenda Humphreys had met with the informant on August 31, 1987, and told him that she had "merchandise to sell, mainly heroin" and wanted the informant to sell it for her. The informant told Humphreys he didn't want to get involved and suggested she call Esquibel directly.

On September 2, 1987, Humphreys again contacted the informant and told him to provide "the friend" with her number and have "him contact me." According to Esquibel, at that time, she told the informant that she "would get Russell Bailey to do the transaction for her." The conversation with the informant took place about 4:30 that afternoon.

Esquibel contacted Humphreys by telephone several times later that day to discuss the setting up of a transaction in which he would purchase approximately four grams of heroin. In one of those conversations, at 7:39 p.m., she told him that her brother-in-law would collect the money and later give him four "tires" of heroin. However, later, in a conversation that took place about 11:10 p.m., she told him that the delivery would be made in a burgundy Cutlass automobile, that he, Esquibel, should remain in his car, and her brother-in-law would come over, deliver the heroin, pick up the money and return the money to her.

Esquibel proceeded to the appointed rendezvous where he saw a maroon Cutlass and parked. The Cutlass was moved and then an individual, whom he later identified as appellant, got out of the car, and came over to the driver's side of Esquibel's automobile. Esquibel motioned to appellant to go around to the passenger side and get in Esquibel's car. Appellant did so, and, in exchange for sixteen hundred dollars, delivered to Esquibel four grams of heroin. Appellant counted the money, placed it in his pocket, and left. A license registration check revealed the Cutlass was registered in the name of Glenda Humphreys. Later, about 1:00 a.m., he had a telephone conversation with Humphreys in which she told him "everything had gone all right."

We believe the evidence, substantially as set out above, justified the conclusion of the court that appellant and Humphreys were co-conspirators. That being so, the challenged statements were not hearsay. Appellant's third point is overruled.

■■■ As we noted above, appellant also contends the admission of the statements deprived him of his right to confrontation of witnesses guaranteed by the Sixth Amendment to the United States Constitution. However, in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Court held that admission of the statements of co-conspirators under Federal Rule of Criminal Evidence 801(d)(2)(E) (which is the same as our Rule 801(e)(2)(E)) does not violate a defendant's rights under the confrontation clause, and that no independent inquiry into reliability is required. That decision is applicable to appellant's contention here. Accordingly, appellant's fourth point is overruled.

■■■ In his fifth point, appellant says the trial court erred in allowing testimony about the number of times heroin of the purity delivered by appellant could be "cut." In the testimony in question, Esquibel testified that the heroin delivered to him was about fifty per cent (50%) pure and that street heroin was ordinarily eight to ten per cent (8–10%) pure. The four grams purchased, if reduced to ten per cent (10%) purity would bring about five thousand ($5,000) dollars if sold on the street.

Citing Texas Rule of Criminal Evidence 403, appellant contends the prejudicial effect of this testimony far exceeded its relevant value, the trial court abused his discretion in admitting it, and reversal is required. It is established that this type of evidence is permissible on the theory that it translates the amount of the narcotic recovered into terms understandable by the jury. *See Kemner v. State*, 589 S.W.2d 403, 406

(Tex.Crim.App. [Panel Op.] 1979); *Magee v. State,* 504 S.W.2d 849, 850–51 (Tex.Crim. App.1974); *Castro v. State,* 432 S.W.2d 948, 949–50 (Tex.Crim.App.1968). Appellant's fifth point is overruled.

In his sixth and seventh points, without citation of relevant authority, appellant complains of questions asked by the prosecutor which, he posits, require reversal. Moreover, he does not refer to the portions of the record containing those challenged questions. We refer appellant to Texas Rule of Appellate Procedure 74(d) and (f). Subsection (d) requires that immediately following each point, reference be made in parentheses to the page of the record where the matter complained of may be found. Subsection (f) provides that in argument under the points, reference be made to the appropriate page of the record and the authorities relied upon be cited.

However, our perusal of the record reveals that in his examination of Esquibel, the prosecutor asked the witness if the fact that he was outnumbered three to one at the "buy site" raised a concern for his safety. We presume this is the subject of appellant's sixth point challenge. Later, after Esquibel had affirmatively replied to a question whether a "cooperating individual," had worked for him for a year, the prosecutor queried "Now, what about Russell Bailey? Did he ever do one thing—." We presume this is the basis of appellant's seventh point challenge.

In both cases, appellant's objection was promptly sustained and the jury instructed to disregard. Additionally, the second question was interrupted by appellant's second successful objection before it was finished and before any answer was given.

It is the general rule that an error in asking an improper question or in admitting improper testimony is cured or rendered harmless by an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such nature as to suggest the impossibility of withdrawing the impression produced on their minds. *Davis v. State,* 645 S.W.2d 817, 818 (Tex.

Crim.App.1983); *Thompson v. State,* 612 S.W.2d 925, 928–29 (Tex.Crim.App. [Panel Op.] 1981); *Gilmore v. State,* 666 S.W.2d 136, 150–51 (Tex.App.—Amarillo 1983, pet. ref'd). Examination of this trial record fails to demonstrate error of such severity as to invoke the exception. This is particularly true in view of the fact that we must presume the jury followed the trial court's instruction. *Reynolds v. State,* 686 S.W.2d at 268. Points six and seven are overruled.

In summary, all of appellant's points are overruled and the judgment of the trial court affirmed.