COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-301-CR
 
DAMIEN DEMARQUIS HUCKABY       
           
           
           
           
APPELLANT
V.
THE STATE OF TEXAS           
           
           
           
           
           
STATE
------------
FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
------------
OPINION
------------
I. Introduction
       
Appellant Damien Demarquis Huckaby appeals his conviction for aggravated
kidnapping. In seven points, he alleges that (1) the statements of an alleged
co-conspirator were admitted in violation of the rules of evidence and the right
to confrontation; (2) the trial court erred by allowing a witness to testify
that Huckaby requested an attorney; (3) the trial court erred by denying his
request for the release of juror information and his motion for new trial based
on juror misconduct; (4) the trial court erred by admitting extraneous bad act
evidence without requiring the State to prove up the purpose for the testimony
and by failing to weigh the probative value of the evidence against the danger
of unfair prejudice; (5) the trial court erred by denying his motion to suppress
a search warrant because the affidavit supporting the warrant lacked probable
cause; (6) the trial court erred by refusing to make the State provide adequate
notice in the indictment and by allowing the jury to return a verdict using an
unproven allegation; and (7) the trial court abused its discretion by refusing
to conduct an in camera examination of the State's file for exculpatory
evidence. We will affirm.
II. Factual
Background
       
The victim, Sergeant Elihue Parker, and his wife, Kimberly Parker, were
experiencing marital problems and had separated. On July 27, 2000, Huckaby and
Marquis Brown visited Sergeant Parker while he was working at the Marine
recruiting station in Lewisville. They wanted to get some personal belongings
that were in Sergeant Parker's car. Huckaby appeared agitated that they had to
wait, and he told Sergeant Parker, "Playing all of these kiddie games and
stuff with each other, sneaking around. If we were back in the 'hood, I would
have done capped your ass."(1) Ezra Bunnell,
a co-worker of Sergeant Parker, heard this exchange.
       
After Huckaby and Brown left, they went to Kimberly's apartment. Over the next
few days, Huckaby, along with three other individuals, discussed and planned the
kidnapping and killing of Sergeant Parker.
       
On July 30, 2000, Kimberly called Sergeant Parker and asked him if she could
come over that afternoon. A group of five individuals arrived at Sergeant
Parker's apartment between 4 p.m. and 5 p.m. The four men exited the car before
Kimberly drove through the entrance gate so that Sergeant Parker would not see
all of them arriving through the complex's surveillance camera. The men
proceeded to the outside of Sergeant Parker's apartment, and Kimberly met them
there. Kimberly, Huckaby, and another man then went upstairs while the other two
men waited.
       
A struggle broke out between Sergeant Parker, Huckaby, and the other man.
Huckaby signaled the two waiting men to join them and help them gain control of
the situation. Once they gained control of Sergeant Parker, they tied him up
with some green ribbon from one of his military swords and put him in the trunk
of Huckaby's car. Huckaby dropped Kimberly off at a friend's home and then drove
to East Texas. He stopped twice along the way to buy duct tape and Saran Wrap.
He then dropped Brown off at his girlfriend's home in Gladewater, Texas.
       
In August of 2000, Sergeant Parker's tied-up body was discovered in the Sabine
River. His body was wrapped in plastic wrap and covered with a sheet secured by
duct tape. During an autopsy, the medical examiner discovered a single gunshot
wound in Sergeant Parker's chest and determined the cause of death to be
homicide.
       
Huckaby pleaded not guilty to aggravated kidnapping, but the jury convicted him
of the offense. He was sentenced to life imprisonment. He appeals this
conviction.
III. Discussion
A. Statements of
Co-conspirator
       
In his first point, Huckaby contends that the statements of Brown, an alleged
co-conspirator, were admitted in violation of the hearsay rules of evidence and
the right to confrontation. The State responds that the trial court properly
admitted the testimony under Texas Rule of Evidence 801(e)(2)(E). Tex. R. Evid.
801(e)(2)(E).
       
A trial court has discretion to determine the admissibility of statements under
the co-conspirator rule. Legate v. State, 52 S.W.3d 797, 803 (Tex.
App.--San Antonio 2001, pet. ref'd). A statement is not hearsay if it is offered
against a party and was made by a co-conspirator of a party during the course
and in furtherance of the conspiracy. Id. The out-of-court statement by
a co-conspirator must be more than merely related to the conspiracy, it must
further the conspiracy. Williams v. State, 790 S.W.2d 643, 645 (Tex.
Crim. App. 1990). A statement only furthers a conspiracy if it advances the
cause of the conspiracy or serves to facilitate it. Deeb v. State, 815
S.W.2d 692, 697 (Tex. Crim. App. 1991), cert. denied, 505 U.S. 1223
(1992).
       
Statements that are made in furtherance of a conspiracy include those made (1)
with intent to induce another to deal with co-conspirators or in any other way
to cooperate with or assist co-conspirators; (2) with intent to induce another
to join the conspiracy; (3) in formulating future strategies of concealment to
benefit the conspiracy; (4) with intent to induce continued involvement in the
conspiracy; or (5) for the purpose of identifying the role of one conspirator to
another. Lee v. State, 21 S.W.3d 532, 538 (Tex. App.--Tyler 2000, no
pet.) (citing Fairow v. State, 920 S.W.2d 357, 362 (Tex. App.--Houston
[1st Dist.] 1996), aff'd, 943 S.W.2d 895 (Tex. Crim. App.
1997)). Conversely, statements that are not in furtherance of a conspiracy, and
thus remain hearsay, include those that are (1) casual admissions of culpability
to someone the declarant had individually decided to trust; (2) mere narrative
descriptions; (3) mere conversations between conspirators; or (4)
"puffing" or "boasting" by co-conspirators. Id.
       
Here, Huckaby argues that Brown's statements were inadmissible because Brown
testified that the plan was formed before he arrived at Kimberly's apartment and
was related to him by the co-conspirators. Therefore, Huckaby argues, the
statements to Brown did not further the conspiracy.
       
Brown, however, testified at trial that "from the conversations that they
were having, you could already tell it was an on-going process and that wasn't
the first or the last conversation." He admitted he was present when the
murder and kidnapping were planned. During the hearing on Huckaby's supplemental
motion in limine, Brown testified that the discussions concerning the kidnapping
and murder of Sergeant Parker took place over a five-day period and said that
Huckaby made suggestions about how the plan should be carried out. Brown
specifically stated that an on-going conversation occurred. It was during these
conversations that Huckaby suggested using Saran Wrap to cover up the smell of
the body, and the group discussed using duct tape.
       
Based on Brown's testimony, we conclude that the discussions held in his
presence were part of an on-going planning process spanning several days, which
advanced the cause of the conspiracy. See Deeb, 815 S.W.2d at
697; see also Tex. R. Evid. 801(e)(2)(E) (a statement is not hearsay if
it is made by a co-conspirator of a party during the course and in furtherance
of the conspiracy). The discussions were not merely conversations, but
formulations of a strategy of concealment intended to benefit the conspiracy to
kidnap and murder Sergeant Parker.
       
Huckaby further argues that the statements were inadmissible because Brown was
high on marijuana at the time of the conversations and was unable to attribute
the statements to particular speakers. However, the credibility of a witness is
an issue for the jury to decide, and credibility attacks on a witness do not
defeat the corroborating effect of the witness's testimony. Solomon v. State,
49 S.W.3d 356, 362 (Tex. Crim. App. 2001). As the court's charge indicated, the
jury could not convict Huckaby based upon Brown's accomplice testimony unless
they believed Brown's testimony was true and found corroborating evidence
establishing Huckaby's guilt. See Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 1979); see also Nolley v. State, 5 S.W.3d 850, 852 (Tex.
App.--Houston [14th Dist.] 1999, no pet.). As the exclusive judge of
Brown's credibility and the weight to be given to his testimony, it was the
jury's task to consider the impact of Brown's marijuana use upon his perception
and recollection of the co-conspirators' statements. See Williams v. State,
692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Thus, evidence that Brown was high
on marijuana during the discussions goes to the weight of Brown's testimony, not
its admissibility.
       
Finally, each declaration or act of a co-conspirator up until the object of the
conspiracy is complete is admissible. Helms v. State, 493 S.W.2d 227,
230 (Tex. Crim. App. 1973); Callaway v. State, 818 S.W.2d 816, 831
(Tex. App.--Amarillo 1991, pet. ref'd). Although Brown was unable to match each
statement with its source during the conversations in question, he identified
each person who was present during the conversations, stated that every member
of the group discussed the plan to kidnap and murder Sergeant Parker, and
testified that Huckaby suggested using Saran Wrap to mask the smell of the
body's decomposition. Thus, Brown's testimony confirmed that Huckaby acted as a
co-conspirator by making suggestions about how the kidnapping and murder should
be carried out. We conclude that this testimony, in conjunction with other
corroborating evidence, was admissible to assist the jury in determining
Huckaby's role in the kidnapping and murder of Sergeant Parker.
       
Because the complained-of statements were made by co-conspirators in furtherance
of the conspiracy, Brown's statements were admissible under rule 801(e)(2)(E),
and the trial court did not abuse its discretion by allowing the testimony.(2)
       
Because the testimony is admissible under rule 801(e)(2)(E), we need not address
Huckaby's rule 803(24) point. We will, however, address his complaint that the
testimony violated his right of confrontation.
       
Statements that are "firmly rooted" exceptions to the hearsay rule are
per se reliable under the Confrontation Clause. Idaho v. Wright, 497
U.S. 805, 817, 110 S. Ct. 3139, 3147 (1990). In Bourjaily v. United States,
the Court held that admission of the statements of co-conspirators under Federal
Rule of Criminal Evidence 801(d)(2)(E), which is the same as our rule
801(e)(2)(E), does not violate a defendant's rights under the Confrontation
Clause and that no independent inquiry into reliability is required. 483 U.S.
171, 182-84, 107 S. Ct. 2775, 2782 (1987). Thus, Huckaby's right of
confrontation was not violated. See Bailey v. State, 804
S.W.2d 226, 231 (Tex. App.--Amarillo 1991, no pet.). Accordingly, Huckaby's
first point is overruled.
B. Request for
Attorney
       
In his second point, Huckaby alleges that the trial court abused its discretion
by allowing a witness, Detective Eddie Barrett, to testify that he requested an
attorney. Specifically, Huckaby argues that this testimony violated his Sixth
Amendment right to counsel and created an improper inference of his guilt.(3)
The State responds that the testimony was proper because Huckaby did not have a
Sixth Amendment right to counsel.
       
The right to counsel clause of the Sixth Amendment to the United States
Constitution protects an accused's right to counsel "only at or after the
time that adversary judicial proceedings have been initiated, whether by way of
formal charge, preliminary hearing, indictment, information, or
arraignment." Griffith v. State, 55 S.W.3d 598, 603 (Tex. Crim.
App. 2001). A person has not become an "accused" within the meaning of
the Sixth Amendment simply because he has been detained by the government with
the intention of filing charges against him. Id. at 603-04.
       
Here, when defense counsel took Detective Barrett on voir dire, he testified
that when he went to Kimberly's apartment, Huckaby was not a suspect in a crime.
Detective Barrett was simply investigating a missing person report. He asked
Kimberly and the other men in the apartment for identification and then
photographed them with a Polaroid camera. Huckaby did not complain about the
picture until after Detective Barrett had taken it. Huckaby then said, "You
can't take my photograph. I will talk to my--. . . I will call my
attorney." Because the State had not filed any charges against Huckaby when
he made the statement, formal adversary judicial proceedings had not started. See
id at 603. Thus, his Sixth Amendment right to counsel had not yet attached.
Id.
       
Furthermore, Huckaby's reliance on a sentence from Hardie v. State is
misplaced. 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). Huckaby contends that,
under Hardie, it is improper to tell the jury that a defendant has
invoked his right to counsel because it creates an inference of guilt. Id.
In Hardie, the Court of Criminal Appeals held that "evidence of
one's invocation of the right to counsel is inadmissible as evidence of guilt .
. . ." Id. Hardie's invocation of counsel, however, came after he
had received Miranda warnings telling him of his right to counsel. Id.
at 320; see also Griffith, 55 S.W.3d at 604. The Court of
Criminal Appeals held that the State's adverse use of evidence that a defendant
invoked a right or privilege granted to him is constitutionally impermissible. Hardie,
807 S.W.2d at 321. As we have discussed, Huckaby's Sixth Amendment right to
counsel had not attached, and police had not advised him of his right to
counsel. Accordingly, Hardie is inapplicable.
       
Finally, Huckaby's statement after he had agreed to be photographed, "I
will call my attorney," was more an after-the-fact expression of his
discomfort with being photographed and of his desire not to speak further with
Barrett than an invocation of a right. See State v. Lee, 15 S.W.3d 921,
923 (Tex. Crim. App. 2000). Thus, the trial court did not abuse its discretion
by allowing Detective Barrett to testify to Huckaby's statements concerning his
attorney. We overrule Huckaby's second point.
C. Release of Juror
Information
       
In his third point, Huckaby argues that the trial court erred by denying his
motion for new trial based on juror misconduct and his request for the release
of juror information. He specifically alleges that during discussions after the
verdict, one of the jurors asked whether or not good time credit would apply to
the thirty-year minimum sentence. The State responds that Huckaby failed to show
good cause for releasing juror information.
       
The court must grant a new trial when the jury has engaged in misconduct that
prevented the defendant from receiving a fair or impartial trial. Tex. R. App.
P. 21.3(g). Texas Rule of Evidence 606(b) prohibits an inquiry into the validity
of a verdict through jurors' testimony or affidavits except to prove outside
influence was improperly brought to bear upon a juror or to rebut a claim that a
juror was not qualified to serve. Tex. R. Evid. 606(b) (stating that juror may
not testify as to any matter or statement occurring during deliberations or to
effect of anything on juror's mind, emotions, or mental processes). An outside
influence must come from outside the jury and its deliberations. Garza v.
State, 82 S.W.3d 791, 794 (Tex. App.--Corpus Christi 2002, no pet.). A
juror's discussion about the application of the parole law to the defendant's
sentence does not constitute an outside influence. Richardson v. State,
83 S.W.3d 332, 361-62 (Tex. App.--Corpus Christi 2002, pet. ref'd); Hines v.
State, 3 S.W.3d 618, 621-22 (Tex. App.--Texarkana 1999, pet. ref'd).
       
Huckaby's claim that jury misconduct occurred during deliberations goes against
established law. The jury's deliberation concerning parole law and good time
credit is not considered an outside influence that allows for inquiry into the
validity of the verdict under rule 606(b). Tex. R. Evid. 606(b); see also
Richardson, 83 S.W.3d at 361-62; Hines, 3 S.W.3d at 621-22
(holding that rule 606(b) is not in conflict with appellate rule 21.3).
Therefore, the trial court did not abuse its discretion by denying Huckaby's
inquiry into the validity of the verdict.(4)
       
Huckaby further argues that the code of criminal procedure permits disclosure of
juror information on a showing of good cause. See Tex. Code Crim. Proc.
Ann. art. 35.29 (Vernon Supp. 2003) ("On a showing of good cause, the court
shall permit disclosure of the information sought."). What constitutes good
cause must necessarily be based upon more than a mere possibility that jury
misconduct might have occurred. Esparza v. State, 31 S.W.3d 338, 340
(Tex. App.--San Antonio 2000, no pet.). Good cause must be based on more than
mere conjecture; it must have a firm foundation. Id.
       
Just as the juror's question about good time credit does not entitle Huckaby to
inquire into the validity of the verdict through juror testimony or affidavits
under rule 606(b), it likewise does not constitute good cause requiring the
court to disclose the juror's personal information. See Tex. Code Crim.
Proc. Ann. art. 35.29; Tex. R. Evid. 606(b). Huckaby asserts no other good cause
for disclosure of the jurors' personal information. Thus, we overrule Huckaby's
third point.
D. Extraneous Bad
Acts
       
In his fourth point, Huckaby contends that the trial court erred by admitting
extraneous bad act evidence without requiring the State to prove up the purpose
for the testimony and by failing to weigh the probative value of the evidence
against the danger of unfair prejudice. Specifically, Huckaby objected to the
testimony of Bunnell that he heard Huckaby say to Sergeant Parker: "If we
were back in the 'hood, I would have done capped your ass." The State
responds that the trial court did not abuse its discretion by admitting the
statement because it was relevant to show a partial motive for the aggravated
kidnapping.
       
Evidence of extraneous bad acts is not admissible to prove the character of a
person in order to show that the person acted in conformity with that character.
Tex. R. Evid. 404(b). However, such evidence may be admissible for other
purposes such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Id. The trial
court's decision to admit such evidence is reviewed under an abuse of discretion
and will not be reversed as long as it is within the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh'g).
       
When the trial court is faced with a relevancy objection, the proponent of the
extraneous bad act evidence must satisfy the trial court that the evidence has
relevance apart from its tendency to prove character conformity. Feldman v.
State, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002). If the proponent succeeds
in his task, then the trial court has discretion to admit the evidence. Id.
       
Huckaby complains that the State failed to recite a proper purpose for admission
of the statement and contends that the trial court did not require one before
overruling his objection. The law does not require the State to specifically
state why extraneous offenses are admissible under rule 404(b). Id. The
State must only satisfy the trial court that the extraneous act has relevance
apart from character conformity. Id. When the trial court overruled
Huckaby's objection, it implied that it was satisfied that the extraneous act
had relevance apart from character conformity. There is no indication in the
record that the court needed any further argument concerning why the evidence
was admissible. If Huckaby had requested that the State be required to
articulate why it believed the statement was admissible, the court could have
required it; however, Huckaby did not make such a request. See Montgomery,
810 S.W.2d at 387 ("The trial court should honor any request by the
opponent of the evidence for articulation into the record of the purpose for
which evidence is either offered by the proponent or ultimately admitted by the
trial court.").
       
The trial court did not abuse its discretion in determining that the statement,
"If we were back in the 'hood, I would have done capped your ass," was
relevant because it went to Huckaby's possible motive for the offense. Evidence
of motive is always admissible because "it is relevant as a circumstance
tending to prove the commission of an offense." Bush v. State, 628
S.W.2d 441, 444 (Tex. Crim. App. 1982); Bisby v. State, 907 S.W.2d 949,
959 (Tex. App.--Fort Worth 1995, pet. ref'd). For evidence to be admissible as
proof of motive, it must tend to raise an inference that the accused had a
motive to commit the alleged offense for which he is on trial. Bush,
628 S.W.2d at 444. Evidence of prior extraneous offenses committed by the
accused against the victim, showing ill will or hostility toward the victim, is
admissible as part of the State's case in chief as circumstantial evidence of
the existence of a motive for committing the charged offense. Page v. State,
819 S.W.2d 883, 887 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd).
       
In Bisby v. State, this court held that telephone threats made against
a murder victim showed the defendant's ill will or hostility toward the victim
and were admissible as circumstantial evidence of motive. 907 S.W.2d at 959; see
also Foy v. State, 593 S.W.2d 707, 709 (Tex. Crim. App. [Panel Op.] 1980)
(holding testimony regarding the prior bad acts of the defendant admissible
because the evidence of ill will was "circumstantial evidence of the
existence of a motive" for committing charged offense). Huckaby's statement
is a similar threat that showed his ill will or hostility toward Sergeant
Parker. This is further evidenced by the discussion that took place at
Kimberly's apartment after Huckaby made the statement. Brown testified that
"[a] discussion broke out about the way--what had just happened and the way
Mr. Parker was treating Kimberly also and about the ongoing situation that was
at hand." The discussion then turned to kidnapping and killing Sergeant
Parker. Thus, the trial court properly allowed the testimony concerning the
extraneous bad act because it established a possible motive for the offense and
not simply character conformity. See Tex. R. Evid. 404(b).
       
Huckaby asserts that the trial court then erred by overruling his rule 403
objection because the record does not show the trial court conducted the
required balancing test before admitting the evidence. Although the trial court
did not conduct a balancing or weighing on the record, because Huckaby's
objection at trial was made under rule 403, we assume the trial court, by
overruling Huckaby's objection, implicitly found that the evidence's probative
value was not substantially outweighed by any unfair prejudice. See Jones,
963 S.W.2d at 183.
       
Huckaby next complains that even if the evidence was admissible under rule
404(b), the trial court should have excluded it under rule 403. Rule 403 favors
admissibility of relevant evidence, and there is a presumption that relevant
evidence is more probative than prejudicial. Montgomery, 810 S.W.2d at
389. The trial court considers several factors in determining whether the
prejudicial effect of evidence substantially outweighs its probative value. Wheeler
v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). These factors include:
(1) the inherent probative value of the evidence; (2) the strength of the
evidence to show the defendant in fact committed the extraneous conduct; (3) the
potential of the extraneous conduct to impress the jury in some irrational but
nevertheless indelible way; (4) the amount of trial time needed to develop the
evidence such that the jury's attention is diverted from the charged offense;
and (5) how great the proponent's need is for the evidence. Montgomery,
810 S.W.2d at 390.
       
Here, the statement was highly probative to show a possible motive for the
offense. Bunnell, the witness testifying to the statement, was the only person
who heard Huckaby make the statement. Because Bunnell had no incentive to
testify falsely and he corroborated Brown's testimony concerning the
altercation, the evidence tends to shows that Huckaby did in fact make the
statement. The time it took for the State to develop the evidence was minute
compared to the length of the trial. Furthermore, the statement was not of a
nature to impress the jury in an irrational or indelible way, because the
evidence reflected that when Huckaby made the statement he was annoyed at having
to wait on Sergeant Parker. The State's need for the evidence was not great, but
the statement was the only evidence of any motive for the offense. Thus, we
conclude that the trial court did not abuse its discretion by overruling
Huckaby's rule 403 objection concerning the extraneous offense evidence.
Huckaby's fourth point is overruled.
E. Motion to
Suppress
       
In his fifth point, Huckaby alleges that the trial court erred by denying his
motion to suppress a search warrant because the affidavit supporting the warrant
lacked probable cause. The State responds that the affidavit was sufficient to
establish probable cause.
       
We review a trial court's ruling on a motion to suppress under a bifurcated
standard of review by giving almost total deference to a trial court's
determination of historical facts and reviewing de novo the court's application
of the law of search and seizure. Carmouche v. State, 10 S.W.3d 323,
327 (Tex. Crim. App. 2000); State v. Duncan, 72 S.W.3d 803, 805 (Tex.
App.--Fort Worth 2002, pet. dism'd w.o.j.). The trial court, in determining
whether a probable cause affidavit sufficiently supports a search warrant,
examines the totality of the circumstances and gives great deference to the
magistrate's decision to issue the warrant. Ramos v. State, 934 S.W.2d
358, 362-63 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1198 (1997).
In determining whether probable cause exists to issue a warrant, a magistrate
may draw reasonable inferences from the affidavit and must interpret the
affidavit in a common-sense and realistic manner. Id. The allegations
in the affidavit are sufficient if they "justify a conclusion that the
object of the search is probably on the premises." Id. at 363.
       
When a magistrate issues a warrant, the magistrate is the equivalent of a fact
finder who engages in reasonable inferences and gives a common-sense
interpretation to the affidavit. Duncan, 72 S.W.3d at 807. Therefore,
we, like the trial court, are to review the affidavit with deference toward any
reasonable inferences the magistrate could have made from the facts and with
deference toward the magistrate's common sense and practical interpretation of
the affidavit. Id. Only the facts found within the four corners of the
affidavit may be considered. Davis v. State, 27 S.W.3d 664, 667 (Tex.
App.--Waco 2000, pet. ref'd).
       
Applying this standard--looking to the four corners of the affidavit, giving the
magistrate's decision to issue the warrant great deference by deferring to the
reasonable inferences from the facts set forth in the affidavit and the common
sense and practical interpretation of the affidavit--we hold that considering
the totality of the circumstances, a probability existed that trace/biological
evidence and binding material probably would be found in Huckaby's car.
       
The warrant affidavit states that affiant's probable cause is based upon
information received from Detective Barrett. During his investigation, Detective
Barrett learned that Huckaby had threatened Sergeant Parker while he was at
work. On August 3, 2000, Detective Barrett learned that a body, wrapped in a
sheet and a piece of plastic bound with gray duct tape, had been found in the
Sabine River near Gladewater. He interviewed Huckaby, and Huckaby admitted to
having the altercation with Sergeant Parker. Detective Barrett later interviewed
Brown, who admitted to being present when the group planned the kidnapping and
killing of Sergeant Parker. Brown said Sergeant Parker was assaulted, subdued,
and forced into the trunk of Huckaby's car. The men then transported Sergeant
Parker, who was still in the trunk, to Gladewater. Brown also told Detective
Barrett where they purchased the gray duct tape to bind the body. Detective
Barrett interviewed another man who also admitted to being present during the
kidnapping and murder.
       
These facts, along with reasonable inferences, provided the magistrate with
probable cause to believe that Sergeant Parker had been assaulted, subdued,
bound with tape, forced into the trunk of Huckaby's car, and driven to Smith
County. As the State correctly reasons, "by applying common sense, the
magistrate could have concluded that the trace and biological evidence could
easily have been overlooked in a clean-up of the car trunk, suggesting a valid
conclusion that such evidence probably would still be there." Thus, we
conclude that the magistrate had probable cause based on the affidavit to issue
a search warrant for Huckaby's car; therefore, the trial court did not err in
overruling his motion to suppress. Huckaby's fifth point is overruled.
F. Adequate Notice
in Indictment
       
In his sixth point, Huckaby contends that the trial court erred by refusing to
make the State provide adequate notice in the indictment so that Huckaby would
know how to prepare his defense and by allowing the jury to return a verdict
using an unproven allegation. The State responds that it is allowed to plead
alternate methods of committing an offense, and it must prove guilt under only
one of the theories.
       
The purpose of an indictment is "to give the defendant notice of the
particular offense with which he is charged, and to enable the court, on
conviction, to pronounce the proper judgment." Lehman v. State,
792 S.W.2d 82, 84-85 (Tex. Crim. App. 1990); see also Tex. Code Crim.
Proc. Ann. art. 21.11 (Vernon 1989). Alternate manner and means of committing a
single offense may be charged in the same indictment. Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958
(1992); see also Lawton v. State, 913 S.W.2d 542, 551 (Tex. Crim. App.
1995), cert. denied, 519 U.S. 826 (1996) ("The State is allowed to
plead all alternative theories of the offense which the evidence may ultimately
prove.") When the State pleads alternate theories of the same offense, it
is not required to prove guilt under all of the alleged theories; proof of guilt
under one theory of the offense will suffice for conviction. Lawton,
913 S.W.2d at 551.
       
Here, the indictment provided Huckaby with notice that he must prepare to defend
himself against the aggravated kidnapping charge. Although he argues that the
indictment contained a theory that could not be supported by the evidence,
kidnapping with intent to terrorize Sergeant Parker, this does not mean that he
did not receive fair notice of how to defend his case. See id. (holding
that the trial court did not err in failing to quash an indictment because it
allegedly contained erroneous alternative theories of the offense when the
evidence supported the defendant's conviction under another theory). Because
Huckaby had notice of the theories under which he was actually convicted, the
indictment fulfilled its function of providing him with notice of the charges
against him.
       
Huckaby also argues that the jury charge improperly included the theory of
intent to terrorize when the State provided no evidence to support it. Where
alternative theories of committing the same offense are submitted to the jury
disjunctively, it is proper for the jury to return a general verdict if the
evidence is sufficient to support a finding under any of the theories submitted.
See Kitchens, 823 S.W.2d at 258. There is no requirement that the jury
designate which of the alternative means of committing the offense they found to
have been proven. See id.
       
Here, the jury did return a general verdict of guilty. Huckaby challenges the
sufficiency of the evidence to support only one of the State's theories and not
the remaining three theories. The State must only prove one of the underlying
offenses charged in the indictment in order to support the conviction for
aggravated kidnapping. Because Huckaby does not contest the sufficiency of the
evidence to prove the other three theories in the indictment and the charge, the
evidence is sufficient to support his conviction. See Kitchens,
823 S.W.2d at 259 (holding that because appellant did not contest the
sufficiency of the evidence to prove a murder in the course of robbery, the
underlying offense supported the conviction for capital murder). We overrule
Huckaby's sixth point.
G. Exculpatory
Evidence
       
In his seventh point, Huckaby contends that the trial court abused its
discretion by refusing to conduct an in camera examination of the State's file
for exculpatory evidence. The State responds that the trial court did not abuse
its discretion in denying the request because he failed to show that any
material and favorable evidence existed in its file.
       
It is settled law that a defendant's due process rights are violated if he does
not obtain, upon request, evidence in the State's possession favorable to him
"where the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution." Brady
v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). But there is
no general right to discovery in a criminal case, and Brady does not
create one. See Weatherford v. Bursey, 429 U.S. 545, 559, 97
S. Ct. 837, 846 (1977). To invoke Brady, the accused must present
evidence that: (1) the prosecution suppressed or withheld evidence; (2) this
evidence would have been favorable to the accused; and (3) this evidence would
have been material to the accused's defense. Ex parte Kimes, 872 S.W.2d
700, 702-03 (Tex. Crim. App. 1993).
       
Brady material applies to information that is known to the prosecution but
unknown to the defense. United States v. Agurs, 427 U.S. 97, 103, 96 S.
Ct. 2392, 2397 (1976); Jackson v. State, 552 S.W.2d 798, 804 (Tex.
Crim. App. 1976) (holding that the prosecutor did not violate his duty to
disclose favorable information when the evidence was already available to the
defense), cert. denied, 434 U.S. 1047 (1978). Brady does not
require the State to produce exculpatory information that it does not have in
its possession or that is not known to exist. Hafdahl v. State, 805
S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990), cert. denied, 500 U.S. 948
(1991); Johnson v. State, 901 S.W.2d 525, 533 (Tex. App.--El Paso 1995,
pet. ref'd). The State does not have a duty to seek out evidence for the
defendant's use. Palmer v. State, 902 S.W.2d 561, 563 (Tex.
App.--Houston [1st Dist.] 1995, no pet.).
       
Huckaby's argument is factually similar to the defendant's argument in Ransonette
v. State, which the court of criminal appeals rejected. 550 S.W.2d 36, 39
(Tex. Crim. App. 1976). The defendant in Ransonette also argued that
the trial court erred by denying his request to have the court make an in camera
inspection of the prosecutor's file to determine if it contained evidence
favorable to the defendant. Id. The court of criminal appeals held that
his motion, in effect, admitted that he knew of no material evidence favorable
to his defense. Id. Rather, he merely wished to rummage through the
State's file to see if there was anything that may have had any relevance to his
guilt or innocence. Id. The court noted that such a request was too
broad to be effective. Id. It further held that "we know of no
constitutional obligation of the trial court to peruse the prosecutor's file for
exculpatory evidence in the absence of a specific request supported by some
showing that such evidence exists." Id. at 40.
       
Here, Huckaby admits in his brief that he did not have any belief at trial and
does not now have any belief that the State withheld exculpatory or favorable
evidence. Thus, he cannot establish the first prong required under Brady,
that the State suppressed or withheld evidence. Furthermore, the court has no
constitutional obligation to peruse the file for such evidence in the absence of
a specific request supported by some showing that the evidence exists. Id.
(holding that there is no significant difference between cases where there has
been merely a general request for exculpatory evidence and cases in which there
has been no request at all). Thus, Huckaby's seventh point is overruled.
IV. CONCLUSION
       
Having overruled all of Huckaby's points, we affirm the trial court's judgment.
 
                                                           
PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.;
and GARDNER, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 29, 2003

1. The jury also heard testimony that Huckaby played a
role in the marital problems between the couple and that he felt like Sergeant
Parker treated his wife badly.
2. Huckaby also contends that the trial court failed to
perform a requested rule 403 balancing analysis of the evidence. Although the
trial court did not conduct a balancing or weighing on the record, because
Huckaby's objection at trial was made under rule 403, we assume the trial court,
by overruling Huckaby's objection, implicitly found that the probative value was
not substantially outweighed by any unfair prejudice. See Jones v.
State, 963 S.W.2d 177, 183 (Tex. App.--Fort Worth 1998, pet. ref'd).
3. Huckaby limits his complaint to the Sixth Amendment
right to counsel; he does not raise any Fifth Amendment concerns.
4. Huckaby also argues that rule 606(b) is
unconstitutional because it interferes with his right to determine juror
misconduct. However, courts have upheld the constitutionality of rule 606(b) and
have determined that it does not deny a defendant the right to a fair trial. See
Richardson, 83 S.W.3d at 362; Hines, 3 S.W.3d at 622 (holding that
a rule approved by the supreme court and court of criminal appeals is
constitutional until one of them holds otherwise).