**Robbie Gene KEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–82–00513–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 27, 1983.

Discretionary Review Granted
May 9, 1984.

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Asst. Dist. Atty., for appellee.

Before GUITTARD, C.J., and STEPHENS and ROWE, JJ.

STEPHENS, Justice.

A jury convicted Robbie Gene Kee of theft of property of a value over $200 but less than $10,000, and the trial judge sentenced him to three years in the Texas Department of Corrections. On appeal, Kee asserts five grounds of error. We agree with his contention that the trial court committed reversible error by refusing to order the State to reveal the name of its informant, and accordingly, we reverse.

Appellant had been known to rebuild or salvage motor vehicles in the past. He owned a farm in a remote area of Kaufman County, and although at trial he contested the fact that he was a salvage dealer and conducted a salvage business on his farm, the appearance of the premises evidenced such activity.

In response to information from a confidential informant to the effect that a stolen pickup truck could be found on appellant's farm, officers of the Texas Department of Public Safety were dispatched to the vicinity of Kee's farm where they set up a surveillance of the area at approximately 11:00 p.m. One officer observed a pickup truck leave the farm. The officer radioed a patrolman, who in turn stopped the pickup and identified appellant as the driver, but did not identify a passenger who was in the pickup with Kee. After identifying Kee, the patrolman permitted him to proceed.

The next morning, Department of Public Safety officers, accompanied by two Garland police officers, without a search warrant, demanded entry to the farm under the authority of TEX.REV.CIV.STAT. ANN. art. 6687–2(e) (Vernon Supp.1982–1983), styled "Automobile salvage dealers," which reads: "An automobile salvage dealer shall allow and shall not interfere with a full and complete inspection by a peace officer of the inventory, premises and records of the dealer." In the ensuing search, the stolen vehicle was found in the barn on Kee's premises.

Appellant's defense, from the very beginning, was that his wife, Charlene Kee, from whom he was separated, acting in conjunction with a person named Shelton Guy Barnum, also known as Buddy Barnum and Charles Reaves, had stolen the truck, hidden it on his property, and set him up by engineering his arrest. This defense was made known to the jury in the defense counsel's opening statement to the jury.

Defense counsel filed a pre-trial motion requesting the court to order the District Attorney to disclose all exculpatory matter, citing as his authority *Frank v. State*, 558 S.W.2d 12 (Tex.Cr.App.1977). In both a pre-trial and trial hearing on appellant's motion that the State disclose exculpatory

or exonerating information and divulge the name of the confidential informant, appellant emphatically, yet unsuccessfully, sought the identity of the informant. The State filed a pre-trial motion in limine seeking an order restraining defense counsel or any defense witness from alluding to an informant.

During trial, Kee testified that he saw Buddy and Charlene hide the truck in the barn; that Buddy told him that Charlene paid him $400 to steal the truck; and that they had called the law and were going to see him in jail. He testified that he had grabbed Barnum and forced him to get into Barnum's pickup while Charlene fled, and that Barnum was in the pickup when he was stopped by the highway patrolman the night before the stolen truck was found in his barn. He says that when stopped, he was trying to find a telephone to call his lawyer.

It was shown that Charlene Kee was hostile to him. Evidence was presented that she had ripped his shirt, had threatened him with physical harm, had smashed out glass windows in two of his trucks, and had tried to hurt him financially by interfering with his business. A check was admitted into evidence made out to Robbie Kee by Charlene with the memo "Rot in Hell!"

The gist of appellant's argument that denial of the identity of the informant constitutes reversible error, is that if the informant was in fact Buddy Barnum, then this fact, and Barnum's inability to deny that he was the informant, were material to his defense that he had been "set up." He argues that, absent disclosure of the informant's identity, he is helpless to contradict Barnum's anticipated denial that he was the informant, or that he was in any way involved in the matter.

We believe that the principles enunciated in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), adopted by Texas in *Acosta v. State*, 403 S.W.2d 434, 437 (Tex.Cr.App.1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1352, 18 L.Ed.2d 449 (1967), and in *Brady v. Maryland*, 373 U.S.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), are dispositive of this case.

*Roviaro* held that a trial court commits reversible error when it permits non-disclosure of the identity of an informant who played a material part in the criminal activity, was present with the accused at the occurrence of the crime, and when the informant might be a material witness as to the alleged crime. The Court recognized that there is no fixed rule as to when the informant's identity must be disclosed; that public interest in the flow of information must be balanced against the defendant's interest in preparing his defense. The Court held: "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628." The Court further recognized that the government's privilege to withhold the informer's name encourages the public to perform its obligation to communicate the commission of crimes to law enforcement officials. Yet, the Court held that a limit must be placed on that privilege: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 627–628. In essence the government's privilege of nondisclosure is limited by due process; the privilege must not deprive a defendant of a fair trial.

After *Roviaro*, the Supreme Court held that disclosure of the identity of an informer is more difficult to obtain in an attack on the validity of a search warrant than on the question of guilt or innocence. *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Then in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court differentiated cases like *Roviaro* where guilt or innocence was at stake and cases like

*McCray* where probable cause was at issue. Justice Stewart, in *McCray*, wrote that: "[W]e have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant." *McCray*, 386 U.S. at 311, 87 S.Ct. at 1062.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196. Materiality was then defined in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), where the court held that: "[A] fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2397.

Turning to Texas cases, we find that in *Ridyolph v. State*, 503 S.W.2d 276 (Tex.Cr. App.1973), the court reversed a case and remanded the cause for a new trial because a witness' statement material to the accused's defense was withheld from him. *Ridyolph* cited *Means v. State*, 429 S.W.2d 490, 494 (Tex.Cr.App.1968), where Judge Onion wrote that: "[A] conviction must be reversed if the prosecutor actively suppresses evidence which may exonerate the accused or be of material importance to the defense." Also in *Ex parte Turner*, 545 S.W.2d 470 (Tex.Cr.App.1977), as in our case, the guilt or innocence of the appellant came down to whether the jury believed the State's evidence or the appellant. The Court of Criminal Appeals reasoned that, since the accused had an obvious motive to fabricate, anything that might tend to corroborate the accused's version would be critical to the defense. In that case the identity of the informant corroborated the testimony of the accused and therefore the court held, relying on the *Agurs* and *Brady* line of cases, that suppression of that evidence would violate the due process clauses of the Fourteenth Amendment to the United States Constitution, and article I, section 19 of the Texas Constitution.

At trial, the State relied on *Stuart v. State*, 456 S.W.2d 129 (Tex.Cr.App.1970), for its argument that appellant was not entitled to the identity of the informant because the appellant knew the name of the informant, and therefore could have called him as a witness. In *Stuart*, the informant provided probable cause for the search, but there was no indication that he was otherwise linked to the offense. Therefore, under *Roviaro* his identity could remain confidential. Although the *Stuart* court cites *Bosley v. State*, 414 S.W.2d 468 (Tex.Cr.App.), *cert. denied*, 389 U.S. 876, 88 S.Ct. 172, 19 L.Ed.2d 162 (1967) as its authority for this broad statement, *Bosley* followed the law as expressed in *Roviaro* and *Acosta* by reiterating the principle in *McCray* that there is a clear distinction between informers providing probable cause for search warrants and informers providing information on the guilt of the accused.

Kee's entire defense is that he was framed by Charlene Kee and Shelton Guy Barnum. If one of them had been shown to have been the informant, his story would have been corroborated and that fact might have been relevant to his guilt or innocence in the eyes of the jury. If Kee's testimony is true, Barnum and Kee's wife actually stole the truck, rather than Kee. Under the facts of this case, disclosure of the informant's identity would have bolstered Kee's testimony and might have affected the trial's outcome.

We hold that disclosure of the informant's identity was improperly withheld. Accordingly, we reverse the case and remand the cause for a new trial.