Carl LONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–00305–CR.

Court of Appeals of Texas,
Waco.

April 28, 2004.

Rehearing Overruled July 6, 2004.

Steve A. Keathley, Keathley & Keathley, Corsicana, for Appellant.

Patrick C. Batchelor, Navarro County Dist. Atty., Christy Brown–Dunn, Navarro County Asst. Dist. Atty., Corsicana, for State.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

A jury found Carl Long guilty of manufacturing a controlled substance; namely, methamphetamine. Long elected to have the trial court assess his punishment. He pled true to two enhancement paragraphs. The court found those enhancements to be true and sentenced Long to forty-five years in prison. Long appeals the trial court's judgment. We affirm.

## OVERVIEW

Detective Elmer Tanner of the Navarro County Sheriff's Department executed a search warrant of Long's residence. The search warrant was issued upon Tanner's affidavit which included information Tanner received from a confidential informant (CI) and from his own personal observations at Long's residence. During the search of the house, methamphetamine and equipment and ingredients commonly used in the production of methamphetamine were found. Tanner field tested the drugs found at Long's residence and received a positive test result for methamphetamine. Long was ultimately charged with manufacturing a controlled substance. Long wrote a letter, which was admitted at trial, in which he confessed to manufacturing about twenty grams of methamphetamine and making some gas and cigarette money from its sale.

## MOTION TO SUPPRESS

■ In his first issue, Long contends that the trial court erred in denying his motion to suppress because the affidavit used for the issuance of a search warrant did not contain sufficient facts to establish probable cause. Specifically, he argues: (1) that the statements attributed to the CI in the affidavit were conclusions, not facts, as is required by Article 18.01;[1] and

(2) that the information sworn to in the affidavit concerning the CI's reliability was false or made with reckless disregard for the truth. We will begin our review of this issue with the second part of his argument.

## Law

We have previously set out the standard of review for a motion to suppress and the law generally applicable to review the sufficiency of a search warrant. *See Brown v. State*, 115 S.W.3d 633, 635–37 (Tex.App.-Waco 2003, no pet.). We will use those standards, with additional law specific to Long's issue, to determine whether the trial court erred in denying Long's motion to suppress.

### Confidential Informant

■ When a CI provides facts upon which probable cause for the issuance of a search warrant relies, the veracity, reliability, and basis of knowledge of the CI, though relevant in determining the value of the informant's report, "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

### False Statement in Affidavit

■ The United States Supreme Court, in *Franks v. Delaware*, stated that if, at a hearing, the defendant establishes by a preponderance of the evidence an allegation of perjury or reckless disregard, the affidavit's false material is set aside; and if the remainder of the affidavit is insufficient to establish probable cause, the search warrant is voided and the fruits of the search are excluded. *Franks v. Dela-*

---

1. TEX.CODE CRIM. PROC. ANN. art. 18.01 (Vernon Supp.2004).

*ware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Under *Franks,* the false statement in the affidavit must have been either intentional or made with reckless disregard for the truth, and must have been necessary to the finding of probable cause, in order to render the warrant invalid. *Dancy v. State,* 728 S.W.2d 772, 782 (Tex.Crim.App.1987). "If the statement was an instance 'where the police have been merely negligent in checking or recording the facts relevant to a probable cause determination,' then as such, it is beyond the pale of *Franks.*" *Id.* (quoting *Franks,* 438 U.S. at 170, 98 S.Ct. at 2683). A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *Dancy,* 728 S.W.2d at 783.

### Affiant's Truthfulness

Long insists the portion of the affidavit regarding the reliability of the CI is false; thus, it must be excised. And once that section is excised, so Long's argument goes, the affidavit is incomplete because it does not contain the requirement of showing the credibility of the CI and, therefore, does not establish probable cause on which to base a search warrant.

Detective Tanner stated in his affidavit: (wording as in original)

> Affiant believes that the information so furnished is true and correct, and that the informant is credible, because said informant has previously furnished information to affiant on at least two or more occasions in Navarro County, Texas, and on each and every occasion, such information has proven true, correct and reliable.

Long argues that Tanner testified at the motion to suppress hearing that the CI had not furnished reliable information to

him on at least two occasions because the CI had only been paid for information once, and it was the department's practice to pay informants when the information provided by the CI proved to be reliable. After a complete reading of the testimony given by Tanner at the motion to suppress hearing, we disagree with Long's evaluation of what was said. There may have been some question raised regarding the number of payments made to this CI, but there was no testimony that contradicted Tanner's statement in the affidavit regarding the CI's reliability.

The trial court heard Tanner's testimony regarding the number of times this CI had proven reliable and the cross-examination concerning the possible inconsistent number of times the department had paid this CI. Giving almost total deference to the trial court's determinations of facts that are based on an evaluation of the credibility of a witness, we find the trial court did not err in choosing to believe Tanner's testimony regarding the reliability of the CI.

### Conclusions in the Affidavit

■ In his affidavit supporting his request for a search warrant, Detective Tanner relayed information he obtained from a CI and from his own personal observations made while at Long's residence, stating in pertinent part: (abbreviations and wording as in original)

> 5. Affiant has probable cause for said belief by reason of the following facts: Affiant, Elmer Tanner, is a deputy sheriff employed by the Navarro County Sheriff's Department as a detective sergeant currently assigned to the narcotics division. Affiant and Detective Tanner have received information on several occasions within the past two months that Carl Long has manufactured as well as possessed methamphetamine speed at his residence in the Brushie Prairie

Community. Detective Tanner has received information from a confidential informant hereinafter referred to as (CI) that Carl Long keeps the equipment to manufacture methamphetamine speed at his residence in a hole in the ground next to the house. The CI said that when Long gets ready to manufacture, he removes the lab equipment from the hole outside the house, takes it into the house and cooks the speed. The CI advised that Carl Long is using the Nazi Lab method to manufacture methamphetamine speed. Detective Tanner has been to the suspected residence within the past two months assisting Detective Jones on a follow up of a arson investigation and Detective Tanner smelled a odor of ether around the southwest corner of the residence. Detective Tanner is familiar that ether is used in the manufacture of Nazi speed. The CI advised Detective Tanner that Long manufactures the speed in the southwest corner of the house which is a bedroom. The CI advised Detective Tanner that Long always has all of the necessary equipment and is able to obtain the necessary chemicals to manufacture Nazi speed.

6. On April 8th, 1999, Detective Tanner received information from a confidential informant hereinafter referred to as (CI) that he or she had been by the suspected premises within the last 48 hrs and he or she had observed methamphetamine (speed) being manufactured at the suspected premises by Carl Long and others.

Long argues that the affidavit is insufficient because the statements of the CI are conclusions and do not show the CI had any basis of knowledge for what the suspected substance was, how it looked, or how it smelled. Long concedes that other facts appear in the four corners of the affidavit but argues the facts that do appear are not sufficient to meet the require-

ment of Article 18.01 for specific facts. TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp.2004).

The information given to Tanner by the CI concerning the hole in the ground, the lab equipment kept in the hole, removal of the lab equipment from the hole, and where in the house the lab equipment is used, are factual statements, not conclusions, and do not require a showing of the CI's knowledge regarding the look or smell of methamphetamine. Further, it is a reasonable inference that a CI who specifies the method of methamphetamine production being used (Nazi Lab method) is familiar enough with methamphetamine to recognize the substance when he or she sees it being produced.

Tanner's personal observation of the smell of ether at the southwest corner of Long's residence was corroborated by the CI's statement that Long made the methamphetamine in a bedroom that was in the southwest corner of his residence. The facts as related by Tanner in his affidavit meet the requirements of Article 18.01. Looking at the totality of the circumstances presented to the magistrate, we find the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing; thus, the trial court did not err by denying the motion to suppress.

Long's first issue is overruled.

### MOTION TO DISCLOSE IDENTITY OF CI

■ In Long's second issue, he argues the trial court erred by denying his motion to disclose the identity of the CI. Long asserts disclosure of the CI's identity is necessary because the CI is a material witness to his guilt or innocence.

### Law

Generally, the State has a privilege to refuse to disclose the identity of a CI who

has furnished information to a law enforcement officer conducting an investigation. *See* TEX.R. EVID. 508(a). There are three exceptions to this privilege which may require the State to disclose the identity of the CI. *See* TEX.R. EVID. 508(c)(1)-(3). Long relies on the second exception, which provides in pertinent part:

> Testimony on Merits. If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of . . . guilt or innocence in a criminal case, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informant can, in fact, supply that testimony.

TEX.R. EVID. 508(c)(2).

 The defendant bears the initial burden of showing that the CI may be able to give testimony necessary to a fair determination of the defendant's guilt or innocence. *Id.* This initial burden has been described as a "plausible showing." *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim. App.1991). "Evidence from any source, but not mere conjecture or speculation must be presented to make the required showing that the CI's identity must be disclosed." *Id.* If the defendant meets the burden of making the preliminary showing, then the trial court is required to hold an in-camera hearing. *See Bailey v. State*, 804 S.W.2d 226, 230 (Tex.App.-Amarillo 1991, no pet.). The in-camera hearing provides the State the opportunity to show facts that rebut the defendant's preliminary showing. *Id.*

**Analysis**

Detective Tanner spoke with the CI on April 8, 1999. The CI told Tanner that he or she had witnessed Long and others manufacturing methamphetamine within the last forty-eight hours from the time of the conversation. In reliance, in part, on that information, Tanner swore in his affidavit that it was his belief Long possessed methamphetamine on or about the date of April 8, 1999. The magistrate issued the search warrant based on probable cause that Long possessed methamphetamine.

Tanner executed the search warrant during the morning hours of April 9, 1999. During the execution of that search warrant, Tanner found and seized the following contraband and laboratory equipment: 1) methamphetamine speed in a coffee filter; 2) a glass jar of liquid that had a coffee filter with methamphetamine on top of it; 3) a glass jar with methamphetamine inside; 4) a glass plate with methamphetamine on it; 5) parade salt, Rooto drain opener and one pair of gloves; 6) broken batteries, used lithium strips and two empty cans of Prestone starting fluid; 7) a blue Wal–Mart sack that contained a white plastic bag of empty boxes of Equate Antihistabs; 8) a propane cylinder; and 9) coffee filters.

Long was indicted for knowingly and intentionally *manufacturing* methamphetamine by means of chemical synthesis. At trial, Tanner testified that it takes about three hours to manufacture methamphetamine by the Nazi Lab method and that the process usually yields between four and seven grams of the finished product. There was also testimony that Tanner seized 116.71 grams of the finished product when he executed the search warrant. Evidence supporting the verdict included the equipment and chemicals to manufacture methamphetamine; the methamphetamine found and seized from Long's residence; testimony of Tanner and Department of Public Safety chemist Araceli Uptmore, who tested the seized contraband; testimony about the letter Long wrote James Jones, an employee of the Navarro County Sheriff's

Department assigned to the criminal investigation division, detailing Long's involvement in the manufacture of the methamphetamine that was found and seized at his residence; and the letter itself containing Long's confession.

During the pre-trial hearing, Long testified that no one, including himself, had been at his residence during the two-and-one-half days prior to the execution of the search warrant. He testified that he had only been home about five minutes prior to the officers arrival and that he had been in Robert Rios'[2] presence before then. Long later testified he had been home thirty minutes to one hour before the officers arrived and that he "did not knowingly and intentionally manufacture nothing. I helped Robert Rios."

■ Long correctly argues that when a CI is present at the time of an illegal transaction or participated in its commission, the CI is a material witness to that transaction and must be identified. *See Anderson v. State,* 817 S.W.2d 69, 72 (Tex. Crim.App.1991). But in this case, the illegal act the CI witnessed is not the same illegal act with which Long is charged. The CI related what he or she had seen to Tanner. This information was used to show probable cause that Long possessed methamphetamine and for the issuance of the warrant to search for methamphetamine.

When the search warrant was executed on the morning of April 9, 1999, the day *after* his conversation with the CI, Tanner found equipment and chemicals used to produce methamphetamine, and methamphetamine in and around that equipment at Long's residence. This evidence, found and seized by Tanner on the morning of April 9, 1999, is the basis for the charge

and indictment against Long. Long himself testified that no one had been at his residence in the previous two-and-one-half days. Thus, the CI was not a material witness to the events upon which the State relied for a conviction, which were the events and evidence Tanner witnessed and seized when he executed the search warrant, and not what the CI had seen within forty-eight hours of his or her conversation with Tanner on the evening of April 8, 1999. *Cf. Williams v. State,* 787 S.W.2d 198, 200 (Tex.App.-Corpus Christi 1990, pet. ref'd) (court commits reversible error where it denies request to disclose identity of informant who participates in negotiation and transfer of cocaine, events upon which State relied for conviction).

The CI only supplied information which established probable cause necessary for the issuance of a search warrant for methamphetamine. He or she did not supply the information upon which the State relied for a conviction on manufacturing methamphetamine; Tanner supplied that particular information. *See Kee v. State,* 666 S.W.2d 199, 202 (Tex.App.-Dallas 1983), pet. dism'd improvidently granted, 758 S.W.2d 788 (Tex.Crim.App.1988) (noting that court-ordered disclosure of informant's identity is more difficult to obtain in an attack on validity of search warrant than on question of guilt or innocence).

Thus, the testimony elicited at the hearing does not satisfy Long's initial burden to show that the CI may be able to give testimony necessary to a fair determination of his guilt or innocence on manufacturing methamphetamine and does not trigger the procedural requirements of Rule 508(c)(2). We overrule Long's second issue.

---

**2.** Robert Rios was a person Long blamed for actually manufacturing the methamphet-

amine. Long also suspected Rios was the CI.

## FACTUAL SUFFICIENCY OF CHRONOLOGY OF PRIOR CONVICTIONS

██ In his third issue, Long states that "the appellant's indictment in the case was fundamentally defective," but argues under this issue that the evidence of the chronology of the prior convictions used to enhance his punishment was factually insufficient.

██ The indictment was enhanced under section 12.42(d) of the Texas Penal Code, which states in pertinent part:

If it is shown on the trial of a felony offense ... that the defendant has previously been finally convicted of two felony offenses, and the second previous conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term not more than 99 years or less than 25 years.

TEX. PENAL CODE § 12.42(d) (Vernon 2004). Where a defendant pleads "true" to enhancement paragraphs, he cannot complain on appeal that the evidence was insufficient to support those enhancements. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim.App. [Panel op.] 1981). Long pled true to the two felony offenses used to enhance his punishment. He cannot now complain about the sufficiency of the evidence to support those offenses. Long's third issue is overruled.

## COUNSEL OF CHOICE

██ In his fourth issue, Long argues the trial court erred by denying him the opportunity to obtain counsel of his choice. Long argues his Sixth Amendment right to assistance of counsel was violated when the court forced him to go to trial, and did not, sua sponte, grant a continuance in

order for Long to hire an attorney of his choice. He argues further that there was not time to hire other counsel, which also violated his rights under the Sixth Amendment.

### Background

Long was indicted for this offense in July of 1999. An attorney was appointed for Long in August of 1999, although the record does not indicate which attorney was appointed. At some point in time Long hired Tony Wright to represent him. Wright started filing motions in the case in September of 1999. Wright also appeared as the attorney representing Long in October of 1999 at a pretrial hearing. By January of 2000, though, Wright filed a motion to withdraw which was denied by the court. On April 5, 2000, the court removed Kelly Myers as "appointed co-counsel" [3] and "re-appointed" Don Phillips. The record does not indicated when Myers was appointed or when Phillips was ever previously appointed. On August 9, 2000, Wright filed another motion to withdraw which was granted the same day. Long's trial started five days later on August 14, 2000.

On the morning of trial, the court heard pre-trial motions. During this hearing, Long voiced his dissatisfaction with Phillips. Long told the court he had previously fired Phillips and there was friction between them and that Long believed Phillips did not have time to represent him in the proper way. The court denied Long's request to remove Phillips. Long told the court Wright was to refund half of his retainer; thus, Long could retain counsel for himself. The court then granted Long's request to obtain retained counsel, but did not remove Phillips as Long's appointed counsel and informed Long that

---

**3.** Presumably Myers was co-counsel to Wright because the letter from the court announcing his removal and the reappointment of Phillips "in this capacity" was sent to Wright.

the trial would continue that afternoon. Phillips offered to assist Long if Long preferred to represent himself. The court indicated it would not recommend Long represent himself, but, if after consulting with Phillips, Long decided to represent himself, the court would require Phillips to be present and assist Long in his defense. After hearing testimony on other matters, the court concluded the pre-trial hearing.

Later in the morning, before jury selection began, the court held a bench conference outside the hearing of the prospective jurors. Phillips informed the court that Long had chosen not to represent himself. The court confirmed the information by stating, "[h]e wants you to continue as his attorney at this point." At this time, the bench conference was concluded and the court began jury selection.

**Law**

 "A criminal defendant is not entitled to *appointed* counsel of choice." *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim.App.1991) (emphasis added). Even though a criminal defendant is entitled to effective assistance of counsel, this constitutional protection cannot be used to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. *Id.* A criminal defendant may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so the defendant may retain other counsel. *Robles v. State*, 577 S.W.2d 699, 704 (Tex.Crim.App.1979); *Webb v. State*, 533 S.W.2d 780 (Tex.Crim.App. 1976).

 An indigent defendant has received the protections provided under the Sixth Amendment when a trial court appoints an attorney to represent him. *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim.App.1982); *Reddic v. State*, 976 S.W.2d 281, 283 (Tex.App.-Corpus Christi 1998, pet. denied). The defendant must accept the attorney or attorneys appointed by the court unless the defendant can show adequate cause for appointment of another attorney. *Thomas v. State*, 550 S.W.2d 64, 68 (Tex.Crim.App.1977); *Reddic*, 976 S.W.2d at 283. If a defendant is dissatisfied with the appointed counsel the defendant must bring the matter to the attention of the court; thus, it is the burden of the defendant to prove entitlement to different counsel. *Malcom*, 628 S.W.2d at 791; *Reddic*, 976 S.W.2d at 283. But "[o]nce the attorney-client relationship has been established any potential disruption of the relationship is subject to careful scrutiny. Thus, neither the attorney nor the client may sever the attorney-client relationship without justifying the severance to the trial court." *Reddic*, 976 S.W.2d at 282 (citing *Buntion v. Harmon*, 827 S.W.2d 945, 948 n. 3 (Tex.Crim.App. 1992) (orig.proceeding)).

There are three options available to the trial court when a defendant requests a change of counsel at the last minute before trial. *Burgess v. State*, 816 S.W.2d 424, 428–29 (Tex.Crim.App.1991).

First, at its discretion the court can appoint, or allow the accused to retain, new counsel. Second, should the trial court deny new counsel, and the accused unequivocally assert his right to self-representation under *Faretta* [*v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)], persisting in that assertion after proper admonishment, the court must allow the accused to represent himself. Third, unless the trial court allows new counsel, it must compel an accused who will not waive counsel and does not assert his right to self-representation to proceed with the lawyer he has, whether he wants to or not.

*Id.*

**Analysis**

On the morning of trial, Long notified the court of his dissatisfaction with Phil-

lips. The trial court followed the first of the three options available to it when confronted with a last minute request to change counsel: it granted Long's request, albeit with rather severe time constraints because the trial was scheduled for that afternoon. The court however, was not required to allow the change of counsel to obstruct the orderly proceedings of the court or to interfere with the fair administration of justice. Wright had been allowed to withdraw five days prior to trial. Phillips had been Long's appointed counsel since at least April 5, 2000. Long waited until the morning of August 14, 2000, the day of the trial, to notify the court of his dissatisfaction. Because the trial court was not required to allow Long to disrupt the orderly procedure of the court when he asked for a change of counsel at the last minute, the trial court did not err by not sua sponte granting a continuance in order for Long to obtain other retained counsel.

Also, Long chose to proceed to trial with Phillips as his attorney. Because Long was given the opportunity to retain other counsel and he elected to continue with Phillips anyway, there was no error by the trial court not to sua sponte grant a continuance in order for Long to obtain different retained counsel. Long's fourth issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

 In his fifth issue, Long argues that he did not received a fair trial because he did not receive effective assistance of counsel. We have previously set out the standard of reviewing ineffective assistance of counsel claims in a prior decision of this court. *Hervey v. State,* 131 S.W.3d 561, 563–64 (Tex.App.-Waco 2004, no pet. h.). We use that standard in reviewing Long's ineffective assistance claim.

### Analysis

In his brief, Long lists eight sub-points that he believes demonstrate ineffective assistance of counsel. He presents arguments for only two of his sub-points. We find no need to review the six sub-points listed without argument, and will review only the two sub-points actually argued in Long's brief.

Long's first argued sub-point regards the failure of his counsel to file a motion to recuse the trial judge. He argues that because the trial judge was the prosecutor in one of Long's previous convictions, his counsel should have filed a motion for recusal. Long asserts that his counsel either missed the fact that the trial judge had once prosecuted Long, and thus, did not file the motion, or his counsel knew the trial judge had once prosecuted Long and still did not file the motion for recusal.

Article 30.01 prohibits a judge from presiding over a case in which the judge was previously the attorney for the State or the defense. TEX.CODE CRIM. PROC. ANN. art. 30.01 (Vernon Supp.2004). If the judge did not participate in the case that is currently pending before the judge, then article 30.01 does not require recusal. The trial judge in this case had not participated in the pending litigation, but had only prosecuted Long in a previous case. Even if Long's counsel had filed a motion for recusal of the trial judge, the judge was not required to grant the motion based on article 30.01.

 In Long's second argued sub-point, he contends that his counsel was ineffective because he did not subpoena the CI to testify. The trial court ruled the State was not required to disclose the identity of the CI. We have upheld the trial court's ruling. Under these circumstances, it was impossible for Long's counsel to subpoena someone whose identity was unknown to him.

Long fails to meet his burden of proving his counsel's representation fell below the objective standard of professional norms

or showing a reasonable probability, that but for his counsel's unprofessional errors, the result of his trial would have been different. Therefore, his fifth issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

■ In his sixth issue, Long contends the trial court erred in failing to grant his motion for directed verdict because the evidence was insufficient to support the verdict. We consider this claim to be a challenge to the legal sufficiency of the evidence to support the conviction. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim.App.2003). The only case used and cited by Long to support his issue is *Clewis. Clewis v. State*, 922 S.W.2d 126 (Tex. Crim.App.1996). *Clewis* set the standard for review of *factual* sufficiency of the evidence, not legal sufficiency of the evidence. The rules of appellate procedure require briefs to contain appropriate citations to authorities. TEX.R.APP. P. 38.1(h). Long has failed to follow this requirement. Therefore, his issue is inadequately briefed and presents nothing for review. *Tong v. State*, 25 S.W.3d 707, 710 (Tex.Crim.App. 2000); *see Walder v. State*, 85 S.W.3d 824 (Tex.App.-Waco 2002, order).

### CONCLUSION

Having overruled each of Long's issues that were properly briefed, we affirm the judgment of the trial court.

Justice VANCE, dissenting.

BILL VANCE, Justice, dissenting.

The majority unduly limits Long's complaint when it says: "Long correctly argues that when a CI is present at the time of an illegal transaction or participated in its commission, the CI is a material witness to that transaction and must be identified." Its decision about the ruling on Long's motion to require disclosure of the informer's identity is then based on these statements:

- "... the illegal act the CI witnessed is not the *same illegal act* with which Long is charged."
- "Thus, the CI was not a material witness to the events upon which the State relied for a conviction, which were the *events and evidence Tanner witnessed and seized when he executed the search warrant* ...."
- "He or she did not supply *the information upon which the State relied for a conviction* on manufacturing methamphetamine; [Detective] Tanner supplied that particular information."

(Emphases added). But Long's motion and his argument are not so limited. The written motion he filed prior to trial, after discussing *Roviaro v. United States*, says:

> In addition to *Roviaro*, the Texas Rules of Evidence, Rule 508(c)(2), provides that the identity of an informant must be revealed when "the informant may be able to give testimony necessary to a fair determination of the issue of guilt, innocence." This has been held to be broader than *Roviaro*. *Bodin v. State*, 807 S.W.2d 313 (Cr.App.1991).

Long's burden was to make a "plausible showing" that the informer "may be able to give testimony necessary to a fair determination of a material issue on ... guilt or innocence." TEX.R. EVID. 508(c)(2); *see Edmond v. State*, 911 S.W.2d 487, 487 (Tex.App.-Texarkana 1995, no pet.) ("It is only necessary for a defendant to make a plausible showing that the informer could give testimony necessary to a fair determination of guilt."). Under the rule, the threshold is low: *may be able to give* testimony. As the majority concedes, once the threshold is crossed, the trial court is required to hold an in camera hearing to determine whether the informer can sup-

ply testimony to which the defendant is entitled in his defense. *See Bodin v. State,* 807 S.W.2d 313, 319 (Tex.Crim.App. 1991) ("the judge *shall* give the public entity a chance to show in camera whether the informer can, in fact, supply that testimony") (italics in original).

In *Roviaro v. United States,* which Long cited, the U.S. Supreme Court considered the issue of when does the prosecution have an obligation to reveal the identity of an undercover informer who is not called to testify at trial. *Roviaro v. United States,* 353 U.S. 53, 60–63, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). Justice Ginsberg has described *Roviaro* as holding that no privilege obtains "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused." *Banks v. Dretke,* 540 U.S. ——, ——, 124 S.Ct. 1256, 1276, 157 L.Ed.2d 1166 (2004). Even though the informer in *Roviaro* did not testify, disclosure was required because he could have "amplified or contradicted" the testimony of government witnesses. *Id.*

As Long also noted, the Court of Criminal Appeals has made clear that the circumstances under which disclosure is required are broader under Rule of Evidence 508(c)(2) than under the common law rule previously followed in Texas. *Anderson v. State,* 817 S.W.2d 69, 71 (Tex.Crim.App. 1991); *Bodin,* 807 S.W.2d at 318.

Long met the *Roviaro* test of showing that the informer's testimony could have amplified or contradicted the State's witnesses. *See Roviaro,* 353 U.S. at 64, 77 S.Ct. at 630. He also met the "plausible showing" test that the informer may be able to give testimony necessary to a fair determination of a material issue on guilt or innocence. *See Edmond,* 911 S.W.2d at 487.

It is undisputed that the informer was not present when the search warrant was executed and Long was arrested. By limiting Long's contention to the informer's presence or participation in the offense, the majority opinion can say that the informer could not testify about "the illegal act with which Long is charged," "events and evidence Tanner witnessed and seized when he executed the search warrant," and "the information upon which the State relied for a conviction." And in so limiting Long's argument, the majority fails to address the claim that Long made under the Rule, both to the trial court and to this court.

I would hold that the trial court should have held an in camera hearing before ruling on Long's motion. *See Heard v. State,* 995 S.W.2d 317, 320 (Tex.App.-Corpus Christi 1999, pet. ref'd). I would also find that Long was harmed. *See id.;* Tex. R.App. P. 44.2(b). An integral part of the in camera process is the preservation of the evidence reviewed by the trial court for review on appeal. *See id.* (very nature of the error prevents us from assessing harm; record does not contain adequate materials to determine whether defendant was harmed); Tex.R. Evid. 508(c)(2). Long has been denied our review of any in camera evidence that the State would have submitted.

Because the majority does not find that the trial court erred in failing to conduct an in camera hearing under Rule 508(c)(2), I respectfully dissent.