**AFFIRM; and Opinion Filed July 1, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01392-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**MICKEY JOE GRIFFIS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 065043**

## MEMORANDUM OPINION

Before Justices Lang, Lang-Miers, and Brown
Opinion by Justice Lang-Miers

The State appeals the trial court's order granting appellee Mickey Joe Griffis's motion to suppress. In a single issue, the State argues that the trial court erred when it found that the supporting affidavit contained insufficient detail to support the magistrate's probable-cause determination. We affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

**The Warrant**

Appellee was charged with possession of methamphetamine after police executed a warrant authorizing the search of appellee's residence for methamphetamine and evidence related to its use and sale. The warrant was issued and executed on September 19, 2014.

The warrant was based on the supporting affidavit of Larry Windon, a narcotics investigator with the Grayson County Sheriff's Office. In his affidavit Windon stated that he had

over 8 years of experience in law enforcement and had investigated over 100 drug cases. With respect to the investigation at issue, Windon stated that he had probable cause to believe that appellee "is presently and illegally possessing or distributing [methamphetamine]." To support that statement Windon attested to the following facts:

> On 09/17/14, Affiant along with other members of the Grayson County Sheriff's Office Narcotics' [sic] Section were conducting surveillance at 106 Bois D'Arc, Tom Bean, TX. Affiant knows this to be the home of [appellee] through previous investigations. Affiant also knows that [appellee] is a known methamphetamine user and distributor through previous investigations as well.

> During the month of August of 2012, Affiant was involved in two separate incidents involving [appellee] and the use and sale of methamphetamine. Affiant executed a search warrant on 08/07/12, and located Ziploc bags containing methamphetamine. Affiant also located numerous new Ziploc style bags as well as digital scales. Affiant knows that the digital scales are used by illegal narcotics dealers to weigh and distribute narcotics. Affiant also assisted in packaging a syringe containing liquid that was obtained on 08/14/12 from Deputy Soto when he went to [appellee's] residence to arrest him on an outstanding warrant.

> While conducting surveillance on the above residence, Affiant observed a white passenger car leave the residence on 09/17/14. [Investigator] Haning initiated a traffic stop on the vehicle, and arrested the driver for [drug possession]. The passenger was also arrested for outstanding warrants.

> On 09/18/14, Affiant along with other members of the Grayson County Sheriff's Office Narcotics' [sic] Section were again conducting surveillance at 106 Bois D'Arc, Tom Bean, TX. Affiant observed a silver passenger vehicle leave the residence, and communicated with [Investigator] Haning until he was able to locate the vehicle and initiate a traffic stop at FM 697 and Hwy 69 in Whitewright, TX. During the traffic stop, a female passenger identified as Jessica Fenwick (w/f 06/18/77) spoke to Affiant. Fenwick advised Affiant that she had been picked up from a Red Roof Inn in Richardson at approximately 5:00 a.m. on 09/18/14. Fenwick also stated that she had observed numerous people come to [appellee's] house and leave on this date. Affiant knows this type of behavior to be consistent with the illegal sale of narcotics. Fenwick went on to say that she observed [appellee] sale [sic] one quarter of an ounce of methamphetamine to a subject for between $275.00 and $300.00. Fenwick also told Affiant that [appellee] had a large amount of methamphetamine still remaining at his residence.

**Motion to Suppress**

Appellee filed a motion to suppress arguing that all of the evidence seized as a result of the search of his residence should be suppressed because there was no probable cause established

to justify the search. During the hearing on his motion, appellee's counsel primarily argued that the affidavit lacked sufficient evidence to demonstrate that Fenwick was a reliable witness or that there was current drug activity at appellee's residence. In response, the State argued that the affidavit was sufficient to establish probable cause.[1] The trial court disagreed with the State and granted appellee's motion.

### Findings of Fact and Conclusions of Law

At the State's request, the trial court issued findings of fact and conclusions of law. In its findings and conclusions the trial court essentially explained that it granted appellee's motion because Windon's affidavit did not set forth facts to show that Fenwick was reliable:

> The affidavit does not state that Jessica Fenwick was in possession of any illegal substances nor that she was arrested.[2] The affidavit also does not state any facts which would corroborate the statement by Jessica Fenwick nor that law enforcement obtained information from Jessica Fenwick which has proven to be reliable.
>
> . . .
>
> The affidavit supporting the search warrant contains statements of Jessica Fenwick setting out detailed information which, if true, provide sufficient probable cause to justify the search of [appellee's] house.
>
> . . .
>
> The affidavit, however, is void of any reference to the reliability of Jessica Fenwick. There is no reference to any law enforcement officers having any past dealings with Ms. Fenwick. The affidavit is void of any factors that would allow a reasonable inference that Ms. Fenwick's statements were reliable.
>
> The affidavit does not contain any information that would allow a magistrate to reasonably infer that the statements made by Jessica Fenwick were declarations against her penal interest. The affidavit is void of any reference that Jessica

---

[1] During the hearing on the motion to suppress the State indicated that it filed a response to appellee's motion. That response, however, is not in the appellate record.

[2] Windon and Haning testified during the hearing about the circumstances surrounding Fenwick's statements. Haning testified that when he stopped the silver vehicle on September 18, Fenwick consented to a search and Haning found methamphetamine in Fenwick's front left pocket and in her purse. Fenwick initially denied that the methamphetamine belonged to her, but eventually she said that she bought it at appellee's house for $30. Windon testified that the price Fenwick described for the other sale of methamphetamine that she witnessed at appellee's house—$275 to $300 for a quarter ounce—was the "going rate for methamphetamine." The parties agreed, however, that for purposes of appellee's motion to suppress, the trial court's review was limited to the facts that were stated in Windon's affidavit.

–3–

> Fenwick was engaged in criminal activity or that she had been arrested at the time her statements were provided.
>
> Furthermore, while the affidavit references that law enforcement had conducted a surveillance of this house for two days, the affidavit is void of any reference to this surveillance actually corroborating the detailed information that was provided by Ms. Fenwick.

The trial court also concluded that the description of the stop that occurred on September 17 and led to the arrest of an unidentified individual for drug possession did not establish probable cause to search appellee's residence because "the affidavit is void of any factors that link the controlled substance found on this unidentified individual to the house in question or [appellee]."

## ISSUE ON APPEAL

In one issue the State argues that the trial court erred when it granted appellee's motion to suppress.

## APPLICABLE LAW AND STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution command that no search warrant shall issue except on probable cause. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. There are no rigid tests or requirements for establishing probable cause. *See Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). But wholly conclusory statements of a law enforcement officer will not suffice. For example, "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." *Id.* at 239. Instead, probable cause is established when sufficiently particularized facts set forth in a sworn statement provide a substantial basis for concluding that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See State v. Duarte*, 389 S.W.3d 349, 354, 360 (Tex. Crim. App. 2012).

When police seek a search warrant based on an informant's tip, there must be some indicia of reliability attending the informant's tip. *Gates*, 462 U.S. at 234. What is required to establish reliability depends upon the informant. *See generally id.* at 232 (noting informants' tips vary greatly in value and reliability because they "come in many shapes and sizes from many different types of persons"). When an informant is an average citizen who by happenstance is the victim of, or witnesses, a crime, the tip generally carries with it a "presumption of reliability." *See Duarte*, 389 S.W.3d at 356. But in other cases, there must be additional facts from which an inference may be drawn that the informant is credible or that the tip is reliable. *See id.* at 356–37. For example, when a tip comes from a first-time informant from the criminal milieu who is making a *quid pro quo* trade by providing information in exchange for actual or potential leniency, courts have upheld a magistrate's finding of probable cause when the tip "[1] is corroborated, [2] is a statement against penal interest, [3] is consistent with information provided by other informants, [4] is a detailed first-hand observation, or [5] is coupled with an accurate prediction of the subject's future behavior." *Id.* An informant's reliability may also be established by a general assertion that the informant has provided reliable, credible information in the past. *See State v. Hill*, 299 S.W.3d 240, 244 (Tex. App.—Texarkana 2009, no pet.).

When reviewing a magistrate's decision to issue a warrant, both trial and appellate courts apply a highly deferential standard in keeping with the constitutional preference for a warrant. *See Duarte*, 389 S.W.3d at 354. We review the supporting affidavit realistically and with common sense, and we uphold the magistrate's decision to issue a warrant so long as the facts set forth in the affidavit provided the magistrate with a substantial basis for determining that probable cause existed. *See id.* at 354–55. But we cannot uphold a magistrate's decision to issue a warrant if sufficient information was not provided to the magistrate to allow a determination of probable cause. *See Gates*, 462 U.S. at 239.

ANALYSIS

The State argues that Windon's affidavit was sufficient to establish probable cause because it set forth sufficient facts to show that Fenwick was reliable. More specifically, the State argues that Fenwick provided enough details to show direct knowledge on her part, and the information she provided was corroborated by Windon's prior investigations. We disagree.

The limited information about Windon's investigations in 2012 does not corroborate Fenwick's statements or otherwise support a conclusion that methamphetamine and related evidence was probably at appellee's residence on September 19, 2014. Windon stated that he located methamphetamine and drug paraphernalia when he executed a search warrant in August 2012, but he did not indicate where that search warrant was executed or how that location was tied to appellee. Windon also said that he helped package a "syringe containing liquid" after another deputy went to appellee's house to arrest him on an outstanding warrant a week later, but Windon does not identify the liquid as an illegal substance. The State argues that Windon's 2012 investigations show "appellee's criminal history for dealing drugs." But Windon does not indicate that appellee was ever charged with or convicted of any offense in connection with those investigations.

The other facts provided to the magistrate on September 19, 2014, in support of Windon's request for a search warrant are as follows:

- While conducting surveillance on September 17, Windon saw a vehicle leave appellee's residence;

- Haning initiated a traffic stop on the vehicle, arrested the driver for drug possession, and arrested the passenger on outstanding warrants;

- While conducting surveillance on September 18, Windon saw a vehicle leave appellee's residence and told Haning;

- Haning located the vehicle and initiated a traffic stop;

- During the traffic stop, Fenwick spoke to Windon and said she had been picked up from a Red Roof Inn around 5:00 a.m. that day;

- Fenwick saw numerous people come and go from appellee's house;

- Fenwick saw appellee sell one quarter ounce of methamphetamine to someone for between $275 and $300, and

- appellee still has a large amount of methamphetamine at his house.

The issue we must decide is "whether the magistrate had a substantial basis for crediting the informant's hearsay." *Duarte*, 389 S.W.3d at 355. The State appears to suggest that Fenwick's reliability can be inferred because she was "named" as opposed to anonymous. But the fact that Windon knew Fenwick's name does not automatically render her a "citizen informant." *See State v. Huddleston*, 387 S.W.3d 33, 38 (Tex. App.—Texarkana 2012, pet. ref'd) (knowing an informant's name "is insufficient, by itself, to establish reliability"). Instead, "[w]hether an informant is a citizen informant must be established by the facts contained in the four corners of the affidavit—including whether the source had prior contact with the police." *Id.* Windon's affidavit does not establish that Fenwick was a citizen informant whose statements carried a presumption of reliability because it does not indicate whether Fenwick had prior contact with law enforcement. *See id.* ("Because the affidavit fails to specify that the informant has not had prior contact with the police, it fails to support a conclusion that the informant was a citizen informant."). As a result, we must determine whether there is some other indicia of reliability attending to her statements. *See Duarte*, 389 S.W.3d at 354–55, 360.

Here the affidavit does not indicate that Fenwick has provided reliable and credible information in the past, nor does it contain any general statement explaining the basis for crediting her statements.

With respect to Fenwick's specific allegations, she first said she saw numerous people come and go from appellee's residence on September 18. But there was no indicia of reliability

attending to that statement. *See, e.g.*, *Gates*, 462 U.S. at 227 (noting anonymous letter accusing the defendants of selling drugs "provides virtually nothing from which one might conclude that its author is either honest or his information reliable"). For example, Windon's affidavit does not indicate that Fenwick's statement was consistent with information provided by other informants. Likewise, Fenwick's statement was not corroborated by Windon's independent investigation. According to Windon's affidavit, he conducted surveillance at appellee's residence on September 17 and 18 and saw only one car leave the residence each day.

With respect to Fenwick's description of the drug transaction she witnessed, the State argues that it was reasonable for the magistrate to infer reliability because Fenwick "personally observed" the transaction and "gave specific, detailed observations." We agree with the State that Fenwick's description was "detailed" in the sense that it included the name of the substance, the quantity, and the price range. But Windon's affidavit does not include any predicate facts to establish Fenwick's veracity or basis of knowledge. The deficiency here is analogous to the deficiency in *Huddleston*, in which an informant told the police that he "personally observed" the defendant in possession of anhydrous ammonia in a propane tank. In that case the court described the deficiency as follows:

> [T]he affidavit does not specify how the informant knew the propane tank contained anhydrous ammonia. Was the container leaking and the informant recognized the odor of ammonia? Even so, how did the informant know it was anhydrous ammonia rather than just ammonia? Did the informant take a sample back to his private chemistry laboratory to conduct a chemical analysis? Or did [the defendant] admit that the tank contained anhydrous ammonia?

*Huddleston*, 387 S.W.3d at 39 (internal footnote omitted). The same type of questions are left unanswered in this case. In other words, how did Fenwick know that appellee was selling methamphetamine? Did she use it? Did she test it? Was it labeled? Did appellee or the buyer say it was methamphetamine? Because Fenwick did not answer these or other similar questions, there are no facts to indicate that her account of the alleged transaction was reliable. *See id.*

Finally, Fenwick also stated that "appellee had a large amount of methamphetamine still remaining at his residence." Again, however, there must be some indicia of reliability attendant to this statement in order for it to support a finding of probable cause to search appellee's residence. In *Long v. State*, 137 S.W.3d 726 (Tex. App.—Waco 2004, pet. ref'd), for example, there was sufficient indicia of reliability attendant to a confidential informant's tip that the defendant manufactured speed because the tip was very detailed and corroborated by an independent investigation. More specifically, the supporting affidavit stated,

> Detective Tanner has received information from a confidential informant hereinafter referred to as (CI) that Carl Long keeps the equipment to manufacture methamphetamine speed at his residence in a hole in the ground next to the house. The CI said that when Long gets ready to manufacture, he removes the lab equipment from the hole outside the house, takes it into the house and cooks the speed. The CI advised that Carl Long is using the Nazi Lab method to manufacture methamphetamine speed. Detective Tanner has been to the suspected residence within the past two months assisting Detective Jones on a follow up of a [sic] arson investigation and Detective Tanner smelled a [sic] odor of ether around the southwest corner of the residence. Detective Tanner is familiar that ether is used in the manufacture of Nazi speed. The CI advised Detective Tanner that Long manufactures the speed in the southwest corner of the house which is a bedroom. The CI advised Detective Tanner that Long always has all of the necessary equipment and is able to obtain the necessary chemicals to manufacture Nazi speed.

*Long*, 137 S.W.3d at 731. Conversely, in *Duarte*, a first-time informant's statement that he saw cocaine at the defendant's house within the last 24 hours did not support a finding of probable cause to search the defendant's residence because it "contained no particular level of detail" and was not coupled with any facts from which an inference could be drawn that the informant was reliable or that his information was credible. *Duarte*, 389 S.W.3d at 358–61.

Comparing the tips in *Long* and *Duarte* to the tip in this case, we conclude that Fenwick's statement that appellee had methamphetamine in his house was not detailed or corroborated like the tip in *Long*. Instead, as with the informant in *Duarte*, Fenwick gave no specific information (such as a quantity or location within the house), and her statement was not corroborated by an

independent investigation or otherwise coupled with any facts from which an inference could be drawn that Fenwick was reliable or that her statement was credible.

We encourage police officers to use the warrant process, and we continue to pay great deference to a magistrate's finding of probable cause. At the same time, the Fourth Amendment requires us to conscientiously assess the basis for crediting an informant's tip. *See Gates*, 462 U.S. at 238; *see also Davidson v. State*, No. 05-10-01264-CR, 2012 WL 592734, at *4 (Tex. App.—Dallas Feb. 23, 2012, no pet.) (not designated for publication) ("What is required is that the affiant actually have some basis for concluding that the informant is credible concerning the type of information supplied."). And in this case there is nothing to indicate that Fenwick was credible because the affidavit does not provide any facts to establish Fenwick's reliability or veracity.

## CONCLUSION

After considering all of the facts contained in Windon's affidavit realistically and with common sense, we conclude that the affidavit did not provide the magistrate with a substantial basis for determining that probable cause existed. As a result, we agree with the trial court that the results of the search cannot be admitted in evidence against appellee. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

We resolve the State's sole issue on appeal against it and affirm the trial court's order granting appellee's motion to suppress.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

151392F.U05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-15-01392-CR      V.

MICKEY JOE GRIFFIS, Appellee

On Appeal from the 15th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. 065043.
Opinion delivered by Justice Lang-Miers.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the trial court's order granting appellee Mickey Joe Griffis's motion to suppress is **AFFIRMED**.

Judgment entered this 1st day of July, 2016.