COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

ROBBIE STEVE PADILLA, §

Appellant, §

v. §

THE STATE OF TEXAS, §

Appellee. §

§

§

§

No. 08-07-00053-CR

Appeal from the

292nd Judicial District Court

of Dallas County, Texas

(TC# F03-35200-V)

## **O P I N I O N**

Appellant was found guilty of possession of a controlled substance with the intent to

deliver and that he had been previously convicted of the felony aggravated assault with a deadly

weapon. The jury sentenced him to 65 years' imprisonment. Appellant raises eight issues on

appeal challenging the admission of evidence found under the search warrant, hearsay testimony

of extraneous offenses, denying Appellant's motion to reveal the identity of the informant, and

denying Appellant's motion for mistrial. We will reverse and remand for a new punishment

hearing.

Officer Kevin Dingledine of the Irving Police Department testified that he was working

with the narcotics division on June 24, 2003. Officer Dingledine made a controlled buy with a

confidential informant that day. He met with the informant and provided the informant with

money to make a buy. The informant entered the location and came out with a quantity of

marijuana. Based on the information provided by the informant, Officer Dingledine obtained a

search warrant. After obtaining the warrant, Officer Dingledine briefed the tactical team, and

then proceeded to execute the warrant. During the briefing, Officer Dingledine was advised that the vehicle they believed Appellant would be driving was leaving the location.

Officer Ed Patterson was assisting Officer Dingledine by conducting surveillance at the home of Robbie Padilla on June 24, 2003. He was making sure the people named in the search and arrest warrant did not leave the premises before the tactical team arrived to the location. Officer Patterson saw Mr. Padilla walk out to a maroon truck with a female. Officer Dingledine instructed Officer Patterson to follow the vehicle, and if he made any traffic violations to stop him. Officer Patterson saw the vehicle drive over a solid double yellow line and called for a marked patrol car to stop him for the traffic violation.

Officer Kim Vanderveen responded to the call made by Officer Patterson. Officer Vanderveen pulled him over for the traffic violation and got Mr. Padilla out of the car. Mr. Padilla had an outstanding warrant and was arrested for it. As she was getting him out of the car, Officer Vanderveen saw the butt of a handgun sticking out of the passenger seat. As a result of this, Officer Vanderveen had the passenger, a female, secured. Officer Vanderveen searched Mr. Padilla incident to the arrest and found about $2,000 in cash on his person. She notified Officer Patterson who instructed her to leave it in the center console of the truck.

Officer Dingledine went to Mr. Padilla's trailer at 2721 Rawhide to execute the search warrant. The tactical team had secured the location, and Officer Dingledine entered the premises. Officer Dingledine encountered an elderly Hispanic female inside the trailer, believed to be Appellant's mother, who was secured and escorted outside during the search. During the search, Officer Dingledine observed marijuana, digital scales, and plastic bags on the kitchen table. There was a shoe box on the table which contained additional marijuana and 46 grams of

methamphetamine. The search also turned up documents showing who lived there, surveillance equipment that was monitoring the street leading up to the trailer, $6,000 cash, and other drug paraphanelia. Officer Steven Hazard, an officer with the crime scene section, testified that he was able to obtain one usable print from the shoe box, which matched Mr. Padilla's fingerprints.

Prior to Officer Dingledine's testimony regarding the execution of the search warrant, defense counsel objected to the search warrant, in that the probable cause to search that Officer Dingledine had testified to differed from the probable cause material in the affidavit attached to the search warrant, which Appellant argued made the warrant insufficient as a matter of law. Specifically, defense counsel argued the search warrant states that the confidential informant observed a quantity of marijuana and methamphetamine in possession of the person listed in the warrant while Officer Dingledine testified that he had conducted a controlled buy through the informant. Officer Dingledine upon cross-examination on the sufficiency of the warrant stated that he believed the statement "in his possession" would encompass those details.

Before trial began, there was a discussion before the court on the use of an extraneous offense of delivering methamphetamine. The State argued that the extraneous offense was evidence of intent to deliver the drugs. Defense counsel argued that it was not such evidence, and was only being offered to show the bad character of the defendant generally. Defense counsel also requested a 403 ruling that the probative value of the evidence outweighs any prejudice to the defendant be made. Officer Glenn Jones testified that in April of 2003, he had met with Mr. Padilla at 2721 Rawhide and had made an agreement to purchase two pounds of methamphetamine from Mr. Padilla. A meeting was arranged at a local McDonald's, but Officer Jones called off the deal because Mr. Padilla appeared nervous about a helicopter that had been

-3-

following him. Officer Jones was able to purchase less than two grams of methamphetamine that day. Defense counsel objected to the admission of the drugs.

During the punishment phase of the trial, Officer Barrett Nelson testified as to gang activity that Mr. Padilla was involved in, namely being a member of Tango Blast and the gang's reputation. The State offered a photo into evidence, which Officer Nelson identified as being in the living room of Mr. Padilla's house. The graphic photo depicts a nude female being vaginally penetrated with a handgun by Appellant. Defense counsel objected stating that the prejudicial value outweighs the probative values, and the picture is not being offered under 37.07. Officer Nelson also testified to being contacted by the Shreveport Police Department and District Attorney regarding extraneous drug offenses Mr. Padilla was associated with in Shreveport, LA. Defense counsel objected to this testimony as being inadmissible hearsay.

Amy Doll testified regarding the murder of her fiancee, Willie George, and identified Appellant in a photographic line-up as one of the men involved. Detective Brent Maudlin investigated the murder of Mr. George. Detective Maudlin received information from confidential informants, which caused him to focus on the address 3417 Toronto and Mr. Padilla. Appellant objected to the testimony regarding the information received from the informants as hearsay. On cross-examination, defense counsel asked for the names, description, and location of the informants. The State invoked their privilege to withhold that information. Officer Maudlin summarized the information received from the confidential informants as being the names of the individuals they needed to investigate, Robbie Padilla, Robert Padilla, and Thomas Pena. The information provided by the informants was not through personal knowledge but rather hearsay and rumors.

-4-

Appellant moved for a motion for mistrial during the testimony of Detective Markulec who was testifying about going to serve an arrest warrant for Robert Padilla. Detective Markulec testified about the conversation he had with Appellant after arresting him, which Appellant objected to barring a hearing on admissibility. On further examination, Detective Markulec stated that Appellant admitted to being a member of Tango Blast. Defense counsel objected, which was sustained, and the jury was instructed to disregard his answer. Appellant moved for a mistrial, and the motion was denied.

Sr. Cpl. George Aranda, an officer with the Dallas Police Department, testified to seeing Appellant break into a car. Sr. Cpl. Aranda has had numerous run-ins with Mr. Padilla. Sr. Cpl. Aranda testified that Appellant is believed to be a member of the Tango Blast gang.

We will address Issue Three first. In Issue Three, Appellant argues the trial court erred in admitting a picture depicting lewd and salacious activity on the part of Appellant during punishment. The State introduced the picture depicting Appellant vaginally penetrating a nude female with a handgun. Appellant objected to the admission arguing that the prejudicial value outweighs the probative value, that it was not being offered under Article 37.07, and that it was irrelevant to any issue of punishment. In his brief, Appellant only offers that the evidence would be inadmissible under Rules 403 and 404(b), and focuses his argument on Article 37.07 of the Texas Code of Criminal Procedure.

Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed. *Haley v. State*, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005), *citing Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App. 1999). The admissibility of evidence at punishment is guided largely by Section

-5-

3 of Article 37.07 of the Texas Code of Criminal Procedure. *Haley*, 173 S.W.3d at 513. Article

37.07, § (3)(a)(1) provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1)(Vernon Supp. 2009).

Although Article 37.07, section 3(a) permits a broad range of relevant evidence to be

admitted at punishment, such evidence must satisfy Rule 403 of the Rules of Evidence. *Lamb v.*

*State*, 186 S.W.3d 136, 143 (Tex.App.--Houston [1st Dist.] 2005, no pet.). Relevant evidence

admissible under Article 37.07, section 3(a) is inadmissible if it tends to suggest the jury impose

punishment on an improper basis.

In determining whether the probative value of photographs is substantially outweighed by

the danger of unfair prejudice, a court may consider the following factors: the number of

exhibits offered; there gruesomeness; their detail; their size; whether they are in color or in black

and white; whether they are close-up and whether the body depicted is clothed or naked; and the

facts of each case. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex.Crim.App. 2002).

Here, there is one photo that was objectionable. The picture is extremely graphic. While

the photograph is the same size as the other pictures admitted, the act being performed is readily

identifiable. The pictures are black and white not color. The female in the photograph is nude,

and is being penetrated with a handgun by Appellant while simultaneously touching herself. We find the trial court abused its discretion in admitting the photograph under Article 37.07, section 3(a) since the photograph is so inflammatory that it suggests the jury punish Appellant for participating in such an act. Furthermore, we find it impossible to say that the error was harmless. Due to the graphic nature of the photograph, there is no fair assurance that the admission of this photograph did not influence or only influenced the jury's decision slightly. Issue Three is sustained.

Although Issue Three has been sustained, we will address the remaining issues as they relate to the propriety of the conviction.

In Issue One, Appellant argues the trial court erred in admitting the evidence found pursuant to the search warrant at 2721 Rawhide Irving, Texas. At trial, Appellant objected to the search warrant on the basis that the testimony from Officer Dingledine regarding the probable cause for a search warrant differed from the probable cause in the search warrant's affidavit. In the brief, Appellant frames the error as error in admission of the fruits of the search warrant, and argues the affidavit does not support probable cause to issue the search warrant. To preserve error on appeal, the complaining party must make a timely, specific objection and obtain a ruling on the objection. TEX.R.APP.P. 33.1(a). The point of error or issue raised on appeal must also comport with the objection made at trial. *Santellan v. State*, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997). Appellant argued at trial that the search warrant was insufficient due to the fact that the probable cause testimony differed from the information in the warrant. Appellant made no objection to the sufficiency of the probable cause to support the warrant. On appeal, Appellant argues that the probable cause is insufficient to support the issuance of the

warrant. The objection raised at trial does not comport to the argument raised on appeal. We find the issue is not preserved for our review. Issue One is overruled.

In Issue Two, Appellant argues the trial court erred in admitting evidence of an extraneous drug offense. The testimony of Officer Jones regarding a purchase of methamphetamine from Appellant was objected to under Rules 401, 404(b), and 403 of the Texas Rules of Evidence. Appellant also argues the trial court failed to conduct the required balancing test under Rule 403. The State argues that the evidence was properly admitted in order to show intent.

The trial court has wide discretion in deciding whether to admit or exclude evidence of extraneous offenses. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004); *Montgomery v. State*, 810 S.W.2d 372, 390-93, (Tex.Crim.App. 1990)(opin. on reh'g). We review the trial court's ruling for an abuse of discretion. *Montgomery*, 810 S.W.2d at 391. As long as the trial court's ruling is within the zone of reasonable disagreement, we will not reverse that ruling. *Id*. Rule 404 provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

TEX.R.EVID. 404(b).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.EVID. 401.

For extraneous offense evidence to be admissible under Rule 404(b), the evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *Johnston v. State*, 145 S.W.3d 215, 220 (Tex.Crim.App. 2004).

The State offered testimony of Officer Jones that he had negotiated the purchase of two pounds of methamphetamine from Appellant while at his home. When the transaction was to be completed at a local McDonald's, the deal was called off, but Officer Jones was able to purchase a little less than two grams from Appellant. Here, this evidence was relevant in not only showing intent to deliver, but also in order to rebut the defensive theories brought out on cross-examination. Defense counsel propounded the theory that the scales found at the trailer could be used to measure out food portions of a diabetic, and that numerous people were in and out of the house, and the container the drugs were found in appeared to have been touched many times even though only one usable fingerprint was found. The evidence was not used for the sole purpose to show conformity of character but was relevant in showing the intent to deliver, and made it more probable than it would have been without the evidence. In overruling a Rule 403 objection, it is assumed the trial court performed a balancing test. *Poole v. State*, 974 S.W.2d 892, 897 (Tex.App.--Austin 1998, pet. ref'd). The balancing test is not required to be on the record. *Id*. The balancing test requires us to look how compelling the evidence is to make a fact of consequence more probable which is related to the strength of the evidence showing that defendant committed the offense, the potential the offense has to impress the jury in some irrational and indelible way, the time needed to develop the evidence, and the need of the proponent to use the evidence. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd). The evidence is clear that Appellant participated in the extraneous offense.

Officer Jones testified that he purchased methamphetamine from Appellant. It makes the intent to deliver much more probable. The extraneous offense is the same type of offense for which Appellant was on trial, and as such would most likely not affect the jury in some irrational and indelible way. The circumstances of the offense were just a simple transaction, which involved no violence or any potential inflaming factors. The testimony of Officer Jones was not a time consuming part of the trial. While intent may be proven by circumstantial evidence, the evidence was needed to rebut the defensive theories brought out during cross-examination of the witnesses. *See Patterson v. State*, 138 S.W.3d 643, 649 (Tex.App.--Dallas 2004, no pet.). The evidence was not so prejudicial that it outweighs the probative value of the evidence. We find the trial court did not abuse its discretion in admitting the evidence. Issue Two is overruled.

We will address Issues Four and Eight together as they are related. In Issue Four, Appellant argues the trial court erred in admitting hearsay evidence of extraneous drug transactions during the punishment phase. In Issue Eight, Appellant argues the trial court erred in admitting evidence of Mr. Padilla's gang membership.

Sr. Cpl. Aranda testified that Mr. Padilla was believed to be a member of Tango Blast. Officer Barrett Nelson was called to testify regarding the gang Tango Blast, and Mr. Padilla's affiliation with that gang. During the testimony, the following exchange occurred:

> Q: (by Mr. Oliphant) And you said you've been -- Or have you been over to Robbie Padilla's house?
>
> A: (by Officer Nelson) Yes, sir, I have.
>
> .      .      .
>
> Q: And you also said they're involved in drugs?

-10-

A:      Yes, Sir.

Q:      And what about drugs, what are they doing?

A:      Selling.  Some of his associates going over to Shreveport.  You can go to a smaller--

Mr. Jackson:   Objection, Your Honor, that all calls for hearsay.

The Court:     Overruled.

Mr. Jackson:   And, Your Honor, when you're talking about the preferences, talking about things that certain other people are doing, that denies us our right of confrontation.

The Court:     Okay. Thank you.

Mr. Jackson:   It's confrontation objection.  Your Honor, I am obligated to be specific in my objection.  That's what I'm doing.

The Court:     I understand.  I've overruled it.  Because it's certainly admissible in the [C]ourt of [C]riminal [A]ppeals Diesal (phonetic) v. State, regarding gang activity if you're talking about gang members of this whatever the name of the gang is.  Can't talk about anyone else.

                                .          .          .

Q:      You are talking about Tango Blast members, right?

A:      Yes, I am.

Q:      And what were you saying with regards to the drugs?

A:      Selling narcotics across state lines in Louisiana, specifically Shreveport.  Committing crimes in Shreveport and here in Dallas.  I got contacted by the Shreveport PD and the DA out of Shreveport.

Mr. Jackson:   I will object, Your Honor. That's hearsay.

The Court:     Overruled.

On cross-examination, the following exchanged occurred:

-11-

Mr. Jackson:     All right. And you talked about the Shreveport operation. Did that have anything to do with Robbie Padilla?

Officer Nelson:     Yes, sir, it did.

Again, sentencing errors by the trial court are reviewed for an abuse of discretion. *Reed v. State*, 48 S.W.3d 856, 859 (Tex.Crim.App. 2001). We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996). As a general matter, testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase to show the defendant's character. *Beasley v. State*, 902 S.W.2d 452, 456 (Tex.Crim.App. 1995); TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1). *Beasley* required that the types of activities in which the gang is involved must also be presented to the jury, so that they may determine if the defendant's gang membership is a positive or a negative character trait. *Beasley*, 902 S.W.2d at 456. *Beasley* further stated it is not necessary to link the defendant to the bad acts if the jury is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) only asked to consider the reputation or character of the accused. *Id*. at 457. However, Section 3(a) of Article 37.07 in the Texas Code of Criminal Procedure, which we quoted above, now governs the admissibility of evidence during the punishment stage of a non-capital criminal trial. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex.Crim.App. 2004); TEX.CODE CRIM.PROC.ANN. art.37.07, § 3(a)(1).

Evidence of membership in a gang engaged in illegal activity would come under the type of "bad acts" relevant to sentencing and Article 37.07 explicitly allows the introduction of such

evidence even without satisfying the requirements in *Beasley*. *See Sierra v. State*, 266 S.W.3d 72, 79 (Tex.App.--Houston [1st Dist.] 2008, no pet.h.).

The trial court is the authority on the threshold issue of the admissibility of relevant evidence during the punishment phase, while the jury determines whether or not the burden of proof for those offenses presented has been satisfied by the party offering the evidence. *Sierra*, 266 S.W.3d at 79, *citing Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App. 1996). The testimony regarding the gang activities and membership is admissible as character evidence. The admission on cross-examination that the Shreveport testimony was concerning Mr. Padilla required the State to prove beyond a reasonable doubt that Appellant trafficked the narcotics or could be held criminally responsible for the offense. The plain language of the provision requires that the evidence may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that the offenses are attributable to the defendant. *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App. 1999). The jury was instructed as follows:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any, were committed.

Extraneous offenses such as the narcotics trafficking at issue here are admissible at the punishment phase. By issuing the instruction, the trial court limited the jury's review of evidence in the punishment phase to those bad acts which had been proven beyond a reasonable doubt. *Sierra*, 266 S.W.3d at 80. We find the trial court did not abuse its discretion in admitting the gang affiliation evidence or the narcotic trafficking evidence. Issues Four and Eight are

-13-

overruled.

In Issue Five, Appellant argues the court erred in admitting evidence of a murder to which Appellant was connected. Appellant argues that information from the unnamed informants Detective Maudlin testified to was inadmissible hearsay. However, before Detective Maudlin testified, Amy Doll identified Appellant in court as being involved with the murder of Willie George. Appellant made no objections to her testimony or her identification of Appellant. To preserve error for appellate review, the complaining party must make a timely, specific objection and obtain a ruling. TEX.R.APP.P. 33.1. Error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). We find no error was preserved for our review. Issue Five is overruled.

In Issue Six, Appellant argues the trial court erred in overruling Appellant's motion to reveal the identity of the informant. Detective Maudlin testified that he obtained information from confidential informants, which caused him to focus the murder investigation on the address 3417 Toronto and Mr. Padilla. Appellant requested the names, description, and locations of the informants. Detective Maudlin stated he did not have that information on him, but he would go get it. After returning from a short break, the State asserted its privilege to withhold the information. A hearing outside the presence of the jury was held where Detective Maudlin summarized the information he received as being the names of three people to look for. Detective Maudlin stated the information was based on rumor and hearsay. The trial court found that the identity of the informants is not necessary to a fair determination of a material issue in this case, and the State is not required to disclose the identity of the informants.

Rule of Evidence 508 provides a privilege for the State to withhold a confidential

-14-

informant's identity. *See* TEX.R.EVID. 508(a). Among several exceptions, the confidential informant's identity must be disclosed if the informant's testimony is necessary to fairly determine the accused's guilt or innocence. *See* TEX.R.EVID. 508(c)(2). The accused bears the burden to establish a plausible showing that the confidential informant's testimony is necessary for a fair determination of guilt or innocence. *See Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App. 1991); *Long v. State*, 137 S.W.3d 726, 732 (Tex.App.--Waco 2004, pet. ref'd). To meet his burden, the accused must provide more than mere conjecture or speculation. *Bodin*, 807 S.W.2d at 318. The accused must show the informant's testimony would significantly aid the jury in determining the guilt or innocence. *Id.* If the accused meets his burden, the trial court must review the testimony in-camera to allow the State to rebut the accused's plausible showing. *Long*, 137 S.W.3d at 732. We review the trial court's determination to deny appellant's motion for an abuse of discretion. *Sanchez v. State*, 98 S.W.3d 349, 356 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).

Appellant was not charged in this case with the murder that the informants provided information on. The informants were not involved in the execution of the search warrant. They only provided names for the detective to investigate. Appellant made no showing of how the informant's testimony would significantly aid the jury. We find Appellant did not carry his burden to show that the informant's identity was material to the case, or that the testimony was necessary to aid the jury. *See Bodin*, 807 S.W.2d at 318. The trial court did not abuse its discretion in denying the motion. Issue Six is overruled.

In Issue Seven, Appellant argues the court erred in denying Appellant's motion for mistrial, when Detective Markulec testified that Appellant admitted to being a member of Tango

-15-

Blast. Detective Markulec testified that it occurred while serving an arrest warrant for Robert Padilla, Appellant's brother. Appellant was placed under arrest for an outstanding warrant. The exchange between Detective Markulec and the prosecutor follows:

Q: Did you talk to him about any affiliations that he had?

A: Yes, sir.

Q: When -- where did that conversation take place?

A: It took place in the back of a police car.

Q: And what type of conversation were you having with him?

A: At that point I was investigating whether he is a gang membership --

Mr. Jackson: Your Honor, I am going to object to any conversations he might have had unless we have a hearing to see whether or not the conversation is admissible.

The Court: Sustained.

Q: You're trying to find an offense at this time, officer, from Robbie?

A: No, sir.

Q: What type of information were you trying to get from him?

A: Whether he's a gang affiliation or not, sir.

Q: Was that just general information?

A: Yes, sir.

Q: When you had that conversation with him, what did he tell you?

A: He told me that he was a member of Tango Blast gang.

Mr. Jackson: Your Honor, I object --

The Court: Sustained.

The Witness: I am sorry, sir.

Mr. Jackson: And he's already blurted out the answer. I'll ask the jury to be instructed to disregard his answer.

The Court: Disregard the last answer.

Mr. Jackson: At this time, I'll move for a mistrial.

The Court: Denied.

We review the denial of a motion for mistrial under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000). A mistrial is only required when the improper question or reference is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Id*. When the trial court sustains an objection and instructs the jury to disregard the objectionable statements, any error in the statements is cured. *See Boyd v. State*, 643 S.W.2d 700, 707 (Tex.Crim.App. 1983).

The jury was told to disregard the statement that Appellant admitted to being a member of Tango Blast. While this statement is prejudicical, it is not of such character to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. Testimony had been previously given by Sr. Cpl. Aranda that Mr. Padilla was believed to be a member of Tango Blast. The evidence that he was a member of the gang had already been admitted. The instruction to disregard the statement cured any error, and the motion for mistrial was properly denied. Issue Seven is overruled.

The State raises a cross-point requesting that we modify the judgment, as we are reversing the judgment and remanding for a new punishment hearing only we need not address

-17-

this point.

Having sustained Appellant's Issue Three, we reverse the judgment of the trial court and remand for a new punishment hearing pursuant to Article 44.29(b) of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 44.29(b)(Vernon Supp. 2009).

January 29, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)